500 A.2d 1205

**COMMONWEALTH of Pennsylvania**

v.

**Douglas KUPHAL, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1984.

Filed Nov. 15, 1985.

Stuart M. Wilder, Assistant Public Defender, Doylestown, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for Com., appellee.

Before SPAETH, President Judge, and CAVANAUGH, WICKERSHAM, ROWLEY, OLSZEWSKI, MONTEMURO, BECK, TAMILIA and JOHNSON, JJ.

PER CURIAM:

Three appeals are before the court. The principal issue is whether the legislative veto provided by 42 Pa.C.S. § 2155(b) is constitutional. On Appeal Nos. 2803 and 2804 Philadelphia 1983, Judge WICKERSHAM, joined by Judges CAVANAUGH, ROWLEY, and JOHNSON, would hold that the legislative veto is not unconstitutional and would affirm. President Judge SPAETH, joined by Judges OLSZEWSKI, MONTEMURO and TAMILIA, would hold that the legislative veto is unconstitutional and would vacate the judgments of sentence. Judge BECK would hold that the

legislative veto is unconstitutional but would further hold that the provision providing for the veto is severable; she therefore joins the judges who would affirm. The judgments of sentence on Appeal No. 2803 and 2804 Philadelphia 1983 are therefore affirmed. Appeal No. 2802 Philadelphia 1983 presents only the issue of whether the trial court in imposing sentence abused its discretion. On that appeal, all of the judges agree that the judgment of sentence should be, and it therefore is, affirmed. The several opinions follow.

WICKERSHAM, Judge:

On June 20, 1983, appellant Douglas Kuphal entered guilty pleas in the Court of Common Pleas of Bucks County to three separate informations, charging him with robbery, theft, receiving stolen property, assault, terroristic threats, criminal mischief, and driving under the influence. Following a presentence investigation, appellant was sentenced to concurrent terms of state imprisonment of twelve (12) to thirty-six (36) months and six (6) to twelve (12) months. These sentences were to run consecutively from a county sentence appellant was serving at the time. Following the denial of his motion for reconsideration of sentence, appellant filed these timely appeals.

On appeal, appellant questions the validity of Pennsylvania's sentencing guidelines, 204 Pa.Code § 303.1 *et seq.* As in its companion cases,[1] the principal issue in this case is whether section 3 of the Act of November 26, 1978, P.L. 1316, No. 319, 18 Pa.C.S. § 1321(b); transferred by Act of October 5, 1980, P.L. 693, No. 142, to 42 Pa.C.S. §§ 2151–2155, 9721 is unconstitutional. Section 3 of the Act provides for the creation of the Pennsylvania Commission on Sentencing and the adoption of sentencing guidelines by the Commission. Appellant argues that section 3 is unconstitu-

---

1. The companion cases are: *Commonwealth v. Mourar,* 03076 Philadelphia 1983; *Commonwealth v. Bates,* 02941 Philadelphia 1983; and *Commonwealth v. Sessoms,* 01999 Philadelphia 1983.

tional and that, therefore, the sentencing guidelines under which he was sentenced, are invalid. We disagree.

The above Act provides that the Sentencing Commission should adopt sentencing guidelines and then publish them in the Pennsylvania Bulletin. After the Commission adopts and publishes the guidelines, "[t]he General Assembly may by concurrent resolution reject [the guidelines] in their entirety ... within 90 days of their publication." If not so rejected, the guidelines become effective 180 days after publication.

In January 1981, the Commission adopted and published proposed guidelines; these were rejected, however, by a concurrent resolution. In January 1982, the Commission presented a new set of guidelines to the General Assembly. The Senate expressly approved the new guidelines; the House, however, took no action on them within the 90 day period specified by the Act. In May 1982, the Sentencing Commission announced that the General Assembly had "adopted" the revised guidelines. They became effective July 22, 1982.

President Judge Spaeth's dissenting opinion notes that the Pennsylvania Constitution provides that the legislative power of the Commonwealth, which is vested in both Houses of the General Assembly, may be exercised only with the concurrence of both Houses *and after presentment to the Governor.* Pa. Const. art. II, § 1; art. III, §§ 1, 4, 5, and 9; art. IV, § 15. The Act under consideration provides that, the General Assembly, by concurrent resolution, may reject the sentencing guidelines adopted by the Sentencing Commission. President Judge Spaeth argues that such a rejection is an exercise of legislative power and can only be made after presentment to the Governor and that since the Act does not provide for presentment to the Governor, it is unconstitutional.

We do not believe that the General Assembly's rejection of the guidelines was an "exercise of legislative power". An "exercise of legislative power" is an act that is

legislative in purpose and effect. President Judge Spaeth says that the rejection was legislative in effect because it changed the procedure which sentencing judges would follow. We disagree. Since the guidelines were not in effect at the time of the rejection, the rejection did not *change* the procedure sentencing judges would follow, but merely *maintained the status quo.* Thus, we do not see how this can be considered an exercise of legislative power.

We believe that the "legislative power" with respect to the sentencing guidelines was exercised not when the General Assembly rejected the first set of guidelines, but when it passed the Act which created this procedure for adopting the guidelines. The Act itself was passed by both Houses and signed by the Governor. This was the "presentment" required by our Constitution. The rejection of the guidelines was not an "exercise of legislative power" such that it also required presentment to the Governor; hence the sentencing guidelines are not invalid on that ground. We hold that section 3 of the Act is constitutional. Finding no merit to the other constitutional challenges presented by appellant, we, therefore, affirm the judgments of sentence.[2]

Judgments of sentence affirmed.

BECK, J., files a concurring opinion.

SPAETH, President Judge, files a dissenting opinion joined by OLSZEWSKI, MONTEMURO and TAMILIA, JJ.

BECK, Judge, concurring:

I agree with Judge Wickersham that the sentencing guidelines are constitutional but I reach that determination through a different analysis.

**2.** Appellant's statement of questions involved were:
A. Do the sentencing guidelines, 204 Pa.Code § 303.1, result from an invalid delegation of legislative authority by the general assembly in violation of article II, § 1 of the Pennsylvania constitution?
B. Are the sentencing guidelines, 204 Pa.Code § 303.1, null and void because they were not enacted by a bill by the general assembly in violation of article III, § 1 of the Pennsylvania constitution?
C. Are all sentences imposed in Pennsylvania necessarily the product of the sentencing guidelines?
Brief for Appellant at 3.

If the legislative veto provision, 42 Pa.C.S. § 2155(b), of the sentencing guidelines legislation were non-severable, I should support Judge Spaeth's view that the process by which the guidelines came into being is unconstitutional. *See* Pa. Const. art. III, § 9. But inasmuch as I find that subsections 218(c) and 218(d) of the Act of October 5, 1980 ("Act of 1980"), P.L. 693, make the legislative veto provision severable, I uphold the constitutionality of the sentencing guidelines adopted pursuant to the Act of 1980.

"The public policy of this Commonwealth favors severability" of statutory provisions. *Department of Education v. First School,* 471 Pa. 471, 478, 370 A.2d 702, 705 (1977). Hence, a statutory provision is presumed severable unless the provision is so interrelated with the statute as a whole that the legislature clearly would not have intended to enact the remainder of the statute without the provision in question, *Heller v. Frankston,* 504 Pa. 528, 475 A.2d 1291 (1984); 1 Pa.C.S. § 1925, or the wording of the statute specifically rebuts the presumption of severability. *See First School.*

The language of the severability clause in the Act of 1980 supports the conclusion that the legislative veto provision is severable. In analyzing the severability clause in the Act of 1980, I consider two basic principles of statutory construction: (1) the legislature is presumed to change the wording of a statute in order to signal a change in legislative intent and (2) the legislature is presumed not to intend any provision of a statute as surplusage but rather is presumed to intend that every word in a statute have effect. *Masland v. Bachman,* 473 Pa. 280, 374 A.2d 517 (1977); *Crusco v. Insurance Company of North America,* 292 Pa.Super. 293, 437 A.2d 52 (1981).

The Act of 1980 does not adopt the severability language of its predecessor act, the Act of November 26, 1978 ("Act of 1978"), P.L. 1316, which clearly proclaimed that the legislative veto was non-severable. The legislative veto provision of the Act of 1978 appears in section 3 of that act. The severability clause (section 7) in the Act of 1978 states

that "[t]he provisions of section 3 [which includes the legislative veto] are not severable and if any provision thereof ... is held invalid, the remainder of section 3 and section 6 shall be invalid." [1]

The legislative veto provision of section 3 of the Act of 1978 is now contained in subsection 218(a) of the Act of 1980. [2] Subsection 218(d) of the Act of 1980 specifically repeals the severability clause (section 7) of the Act of 1978. The Act of 1980 severability clause appears in subsection 218(c) which declares that "[t]he provisions of subsection (a), 42 Pa.C.S. § 9781 (relating to appellate review of sentence), and section 6 of the act of November 26, 1978 ... are not severable and if any provision thereof ... is held invalid, the remainder of subsection (a), 42 Pa.C.S. § 9781 and such section 6 shall be invalid." [3]

While the plain meaning of the words in the Act of 1978 severability clause evidences that the legislative veto provision in that act was non-severable, the question remains whether the language in the Act of 1980 precludes severability of the Act of 1980 legislative veto provision.

The severability clause in the Act of 1980 provides that subsection (a), 42 Pa.C.S. § 9781 and section 6 of the Act of 1978 are non-severable from the remainder of the Act of 1980. Guided by the tenets of statutory construction, I interpret the phrase "subsection (a), 42 Pa.C.S. § 9781" to

1. Section 6 of the Act of 1978 appropriates $100,000 to the Pennsylvania Commission on Sentencing.

2. Section 3 of the Act of 1978 encompassed the following subjects: composition and organization of the sentencing commission, powers and duties of the commission, Commonwealth agency cooperation, adoption of sentencing guidelines, publication of sentencing guidelines, and appellate review of sentence. The legislative veto provision appeared under the heading "publication of sentencing guidelines." Subsection 218(a) of the Act of 1980 contains the following topics: Pennsylvania Commission on Sentencing, composition of commission, powers and duties, adoption of sentencing guidelines, and publication of sentencing guidelines. The legislative veto provision appears under the heading "publication of sentencing guidelines." Subsection 401(a) of the Act of 1980 covers appellate review of sentence.

3. The subject matter of 42 Pa.C.S. § 9781 (relating to appellate review of sentence) is covered by subsection 401(a) of the Act of 1980.

mean subsection (a) of 42 Pa.C.S. § 9781 rather than subsection (a) of section 218 of the Act of 1980.

If the legislature had intended "subsection (a)" to refer to section 218 of the Act of 1980, the legislature could have unequivocally indicated so by inserting the words "of this section" immediately after the reference to subsection (a). This is precisely the technique utilized by the legislature in subsection 218(e) of the Act of 1980 where in a sentence referring, *inter alia,* to Title 42 (42 Pa.C.S.) and the Act of 1980, the legislature employed the phrase "subsection (c) of this section" to show that subsection (c) related to section 218 of the Act of 1980 and not to Title 42.

Given the repealer provision and the severability clause language in the Act of 1980, I am convinced that nothing in the Act of 1980 forecloses the severability of the legislative veto provision from the rest of the Act of 1980.

Agreeing with Judge Spaeth that the legislative veto provision is unconstitutional, I should strike that single provision of the Act of 1980. However, inasmuch as the Act of 1980 legislative veto provision was not exercised in conjunction with the sentencing guidelines adopted pursuant to the Act of 1980 and is, by my analysis, severable, I should uphold the constitutionality of the remaining provisions of the Act of 1980 [1] and the sentencing guidelines adopted in conformity therewith.

SPAETH, President Judge:

The issue on this appeal and its companion cases [1] is the constitutionality of Section 3 of the Act of November 26,

---

**4.** The enabling legislation for the establishment of the sentencing commission authorized to provide sentencing guidelines was passed in accordance with the constitutional requirement of bicameral approval and presentment to the governor.

**1.** The companion cases are: *Commonwealth v. Mourar,* 03076 Philadelphia 1983; *Commonwealth v. Bates,* 02941 Philadelphia 1983; and *Commonwealth v. Sessoms,* 01999 Philadelphia 1983. In this case, there are three appeals from judgments of sentence. Appeal from judgment of sentence No. 2802 Philadelphia 1983 raises only the question of whether the trial court abused its discretion in sentencing appellant to six to twelve months incarceration. Upon review of the

1978, P.L. 1316, No. 319,[2] providing for the Pennsylvania Commission on Sentencing and the adoption of sentencing guidelines. I should hold that Section 3 of the Act is unconstitutional, from which it follows that the sentencing guidelines, 204 Pa.Code § 303.1 *et seq.*, are invalid. Since in sentencing appellant, the trial court considered the guidelines, the judgments of sentence should be vacated and the case remanded for resentencing. I should further hold, however, that this decision is prospective only and therefore does not apply to cases in which the sentencing guidelines were considered by the sentencing judge but not challenged by the defendant as unconstitutional.

–1–

The Sentencing Code [3] provides that the sentencing judge has discretion to choose from among five sentencing alternatives. 42 Pa.C.S. § 9721 (providing for a sentence of total confinement, partial confinement, probation, fine, or

record, I find no abuse of discretion and therefore I should not disturb this sentence. Appeals No. 2803 Philadelphia 1983 and No. 2804 Philadelphia 1983 both raise the constitutionality of the sentencing guidelines.

2. This Act amended various sections of Title 18 (Crimes and Offenses): § 1 amended 18 Pa.C.S. § 1321(b) (general standards for sentencing); § 2 repealed Subchapter G of Chapter 13 of Title 18; § 3 amended Chapter 13 and added Subchapter G, 18 Pa.C.S. § 1381–1386 (providing for the Pennsylvania Commission on Sentencing); § 4 amended 18 Pa.C.S. § 4104 (tampering with records or identification); § 5 established interim guidelines for certain repeat offenses, *see* note 7, *infra;* § 6 appropriated money for the Pennsylvania Commission on Sentencing; § 7 provided that the provisions of § 3 were inseverable; and § 8 specified the effective date of the Act and included a sunset provision. The provisions of the Act relating to sentencing were repealed and transferred to Title 42 by the Act of Oct. 5, 1980, P.L. 693, No. 142, §§ 218(a), 401(a). (Act of July 10, 1980, P.L. 513, No. 106, § 3, amended H.B. 1873, which became the Act of Oct. 5, 1980.) Section 3 of the Act of 1978, which is being challenged on this appeal, was transferred by § 218(a) and § 401(a) of the Act of 1980 and now is codified at 42 Pa.C.S. §§ 2151–2155, 9781. For convenience, unless otherwise noted, when I refer to the Act of 1978, I am referring to § 3 relating to the Pennsylvania Commission on Sentencing as repealed, transferred, and amended.

3. Act of December 30, 1974, P.L. 1052, No. 345, § 1 *et seq.,* 18 Pa.C.S. § 1301, *et seq.;* transferred by Act of Oct. 5, 1980, P.L. 693, No. 142, § 401(a) to 42 Pa.C.S. § 9701 *et seq.*

determination of guilt without further penalty). The Code sets general standards by which this discretion is to be exercised, 42 Pa.C.S. § 9721(b), states the principles specific to each alternative, 42 Pa.C.S. §§ 9722–9726, and identifies the factors that weigh in favor of probation, 42 Pa.C.S. § 9722.[4]

By Act of November 26, 1978, the General Assembly provided that the sentencing judge must also consider "sentencing guidelines," to be adopted by the Pennsylvania Commission on Sentencing.[5] The Act further provided that until guidelines adopted by the Commission became effective, the judge was to "consider as a guideline in imposing sentence" that certain repeat offenders should "be sentenced to a minimum term of not less than four years imprisonment."[6]

**4.** In the case of certain offenses, the sentence is not discretionary but mandatory: murder in the second degree, 18 Pa.C.S. § 1102(b) (life imprisonment); certain offenses committed with a firearm, 42 Pa.C.S. § 9712 (minimum must be at least five years confinement); certain offenses committed on public transportation, 42 Pa.C.S. § 9713 (same); certain second and subsequent offenses, 42 Pa.C.S. § 9714 (same); and murder in the third degree when the offender has a prior conviction for murder or voluntary manslaughter, 42 Pa.C.S. § 9715 (life imprisonment).

**5.** Act of Nov. 26, 1978, P.L. 1316, No. 319, § 1, 18 Pa.C.S. § 1321(b); transferred by Act of Oct. 5, 1980, P.L. 693, No. 142, § 401(a) to 42 Pa.C.S. § 9721(b). For a discussion of the background of sentencing guidelines in Pennsylvania, *see* Martin, Interests and Politics in Sentencing Reform: The Development of Sentencing Guidelines in Minnesota and Pennsylvania, 29 Vill.L.Rev. 21, 61–70 (1983–84).

**6.** Act of Nov. 26, 1978, P.L. 1316, No. 319, § 5 states:
Pursuant to this section, there is established an interim guideline for the minimum sentencing of certain repeat offenders.
(a) Until sentencing guidelines adopted by the Pennsylvania Commission on Sentencing and relating to the offenses set out in this subsection become effective pursuant to 18 Pa.C.S. § 1385 (relating to publication of guidelines for sentencing) [repealed; see, now, 42 Pa.C.S. § 2155], when any person is convicted in any court of this Commonwealth of murder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery, aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) (relating to aggravated assault) involving the use of a firearm, arson or kidnapping, or of attempt to commit any of these crimes, and when that person has been previously convicted in this Commonwealth, or any other state or the District of Columbia, or any Federal court, of any

This legislation was the result of widespread interest in the sentencing commission concept. In 1978, the Uniform Law Commissioners' Model Sentencing and Corrections Act proposed a sentencing commission to develop sentencing guidelines, which would be effective following notice and comment rulemaking procedures and filing in the appropriate state office. § 3–110 *et seq.* Senate Bill No. 1437, 95th Cong., 2d Sess. (1978), which was the subject of considerable debate, also proposed a sentencing commission to develop sentencing guidelines. And just prior to passage of the Act of 1978, Minnesota had created a sentencing commission to establish guidelines for that state.[7] Since 1978, the sentencing commission concept has gained acceptance in other states and in the Congress [8], and in 1979, the American Bar Association recommended the use of a commission for setting minimum sentences. Standards Relating to Sentencing Alternatives and Procedures, Standard 18–4.-3(c)(i) (1979).

> of the offenses set forth in this section or their equivalent, the sentencing court shall consider as a guideline in imposing sentence that such person be sentenced to a minimum term of not less than four years imprisonment.
>
> .        .        .        .        .
>
> (j) This section shall expire and be deemed null and void upon the effective date of sentencing guidelines adopted by the Pennsylvania Commission on Sentencing relating to the offenses set out in subsection (a).

**7.** 1978 Minn. Laws 723, Minn.Stat.Ann. § 244.09 *et seq.*

**8.** Congress has recently passed the Comprehensive Crime Control Act of 1984, which creates an independent sentencing commission to develop sentencing guidelines. Act of Oct. 12, 1984, Pub.L. 98–473, Title II, § 217, 98 Stat. 2017, 28 U.S.C. § 991–98. Maryland authorizes the judiciary to adopt sentencing guidelines. Md.Code Ann. Art. 27, § 643C. Laws in New York, South Carolina, and Washington provide for sentencing commissions. 1983 N.Y. Laws 711; S.C.Code Ann. § 24–27–10 *et seq.;* Wash.Rev.Code § 9.94A.040 *et seq.* In Wisconsin, a sentencing commission was given the authority to promulgate guidelines if the Supreme Court determined it did not have the authority. Wis.Stat.Ann. § 973.011. *See* Judicial Administration: Felony Sentencing Guidelines, 120 Wis.2d 198, 353 N.W.2d 793 (1984) (holding that the Supreme Court did not have authority to create sentencing guidelines).

Under the Act of 1978, the Pennsylvania Commission on Sentencing is specifically authorized to

(1) Establish general policies and promulgate such rules and regulations for the commission as are necessary to carry out the purposes of this subchapter and Chapter 97 (relating to sentencing).

(2) Utilize, with their consent, the services, equipment, personnel, information and facilities of Federal, State, local and private agencies and instrumentalities with or without reimbursement therefor.

(3) Enter into and perform such contracts, leases, cooperative agreements and other transactions as may be necessary in the conduct of the functions of the commission, with any public agency or with any person, firm, association, corporation, educational institution or nonprofit organization.

(4) Request such information, data and reports from any officer or agency of the Commonwealth government as the commission may from time to time require and as may be produced consistent with other law.

(5) Arrange with the head of any government unit for the performance by the government unit of any function of the commission, with or without reimbursement.

(6) Issue invitations requesting the attendance and testimony of witnesses and the production of any evidence that relates directly to a matter with respect to which the commission or any member thereof is empowered to make a determination under this subchapter.

(7) Establish a research and development program within the commission for the purpose of:

(i) Serving as a clearinghouse and information center for the collection, preparation and dissemination of information on Commonwealth sentencing practices.

(ii) Assisting and serving in a consulting capacity to State courts, departments and agencies in the development, maintenance and coordination of sound sentencing practices.

(8) Collect systematically the data obtained from studies, research and the empirical experience of public and private agencies concerning the sentencing processes.

(9) Publish data concerning the sentencing processes.

(10) Collect systematically and disseminate information concerning sentences actually imposed.

(11) Collect systematically and disseminate information regarding effectiveness of sentences imposed.

(12) Make recommendations to the General Assembly concerning modification or enactment of sentencing and correctional statutes which the commission finds to be necessary and advisable to carry out an effective, humane and rational sentencing policy.

42 Pa.C.S. § 2153(a).[9]

The Act further provides that the guidelines adopted by the Commission shall:

(1) Specify the range of sentences applicable to crimes of a given degree of gravity.

(2) Specify a range of sentences of increased severity for defendants previously convicted of a felony or felonies or convicted of a crime involving the use of a deadly weapon.

(3) Prescribe variations from the range of sentences applicable on account of aggravating or mitigating circumstances.

42 Pa.C.S. § 2154.

Finally, the Act provides the procedure by which the guidelines may become effective. Before adopting any guidelines, the Commission must publish proposed guidelines in the Pennsylvania Bulletin, and hold public hearings, at which specified persons and representatives of specified organizations may testify. 42 Pa.C.S. § 2155(a)(1). The Commission must then publish the guidelines, as adopted

---

9. In addition, the Commission is required to report annually to the General Assembly, the Administrative Office of Pennsylvania Courts, and the Governor, 42 Pa.C.S. § 2153(b), and is granted "such other powers ... as may be necessary to carry out the purposes of this subchapter or as may be provided under any other provision of law...." 42 Pa.C.S. § 2153(c).

after such hearings, in the Pennsylvania Bulletin, 42 Pa.C.S. § 2155(a)(2). The guidelines must be adopted and published within 21 months of the Commission's first meeting. 42 Pa.C.S. § 2155(a)(3).[10] However, when the guidelines have been thus adopted and published, "[t]he General Assembly may by concurrent resolution reject [the guidelines] in their entirety ... within 90 days of their publication...." 42 Pa.C.S. § 2155(b).[11] If not so rejected, the guidelines become effective 180 days after publication.[12] 42 Pa.C.S. § 2155(c).

–2–

The Commission on Sentencing began its work in April 1979, and published its proposed guidelines in October 1980. *See* 10 Pa.Admin.Bull. 4181–96 (Oct. 25, 1980). After hearings, the guidelines were revised, and in January 1981 they

10. Act of November 26, 1978, P.L. 1316, No. 319, § 3, 18 Pa.C.S. § 1385(a)(3) provided for an 18-month period. In 1980, the provision was amended to 21 months. Act of July 10, 1980, P.L. 513, No. 106, § 3, 42 Pa.C.S. § 2155(a)(3). The 1980 transfer act, *see* note 2, *supra,* provided for an 18-month period. Act of Oct. 5, 1980, P.L. 693, No. 142, § 218(b). The Act of July 10, 1980 purported to amend H.B. 1873, which became the Act of Oct. 5, 1980.

11. Other jurisdictions also provide for legislative review. The federal statute provides that the initial guidelines must be submitted to Congress, that the General Accounting Office is to undertake a study and make a report within 150 days, and that guidelines shall not go into effect until six months after submission. Comprehensive Crime Control Act of 1984, Act of Oct. 12, 1984, Pub.L. 98–473, Title II, § 235(a), 98 Stat. 2031. Amendments to the guidelines must also be submitted to Congress and "shall take effect one hundred and eighty days after the Commission reports them, except to the extent the effective date is enlarged or the guidelines are disapproved or modified by Act of Congress." *Id.,* § 217, 28 U.S.C. § 994(*o*). In Minnesota, "[t]he guidelines shall be submitted to the legislature on January 1, 1980, and shall be effective May 1, 1980, unless the legislature provides otherwise." Minn.Stat.Ann. § 244.09(12). In New York, the State Committee on Sentencing Guidelines must transmit guidelines to the governor and legislature, and they shall have no force and effect "unless enacted into law." 1983 N.Y. Laws 711. In Washington, "[T]he legislature shall enact laws approving or modifying either the standards recommended by the sentencing commission, ...." Wash.Rev.Code § 9.94A.070(1).

12. Originally, the effective date was 90 days after publication. *See* Act of Nov. 26, 1978, P.L. 1316, No. 319, § 3, amended Act of July 10, 1980, P.L. 513, No. 106, § 3.

were adopted by the Commission and published. *See* 11 Pa.Admin.Bull. 463–76 (Jan. 24, 1981). However, in April 1981 the General Assembly by concurrent resolution rejected the guidelines. H.Res. 24 (adopted by House, Apr. 1, 1981; adopted by Senate, Apr. 8, 1981). The resolution "urge[d] and direct[ed]" the Commission to "revise and resubmit" the guidelines within six months. *Id.* In this regard, the resolution

> submit[ted] the following suggestions to the Sentencing Commission as the areas where the Commission should review the initial sentencing guidelines and examine the advisability of revisions:
>
> (1) Increase the upper limit of sentences within each section of the grid.
>
> (2) Provide judges more latitude in sentencing where aggravating or mitigating circumstances are found.
>
> (3) Clarify that the list of aggravating and mitigating circumstances is not exclusive.
>
> (4) Eliminate prior guideline proposal relating to treatment of concurrent or consecutive sentencing practices.
>
> (5) Increase the severity of sentences for crimes involving serious bodily injury or the likelihood or threat of serious bodily injury.
>
> *Id.*

In October 1981, as instructed by the concurrent resolution, the Commission proposed new guidelines, *see* 11 Pa. Admin.Bull. 3597–3605 (Oct. 17, 1981), and in January 1982, after hearing and publication, guidelines were again presented to the General Assembly. *See* 12 Pa.Admin.Bull. 431–40 (Jan. 23, 1982). The Senate expressly approved the new guidelines, S.Res. 227 (adopted by Senate, Apr. 20, 1982), but the House took no action on them within the 90-day period specified by the Act of 1978. 42 Pa.C.S. § 2155(b). In May 1982 the Commission announced that the General Assembly had "adopted" the guidelines, and, in anticipation of their effective date, scheduled training sessions for trial court judges. *See* 12 Pa.Admin.Bull. 1536 (May 15, 1982). The guidelines became effective July 22,

1982, 204 Pa.Code § 303.1 *et seq.*, applicable to cases in which the offense was committed on or after that date, *id.* § 303.1(d).

–3–

Before one may consider appellant's arguments that the sentencing guidelines are unconstitutional, it is necessary to consider the issue of appellant's standing.

Appellant has no standing to argue that in adopting and promulgating the guidelines as effective, the Sentencing Commission infringed upon the authority of either the General Assembly or the Governor. *Cf. United States v. City of Yonkers*, 592 F.Supp. 570 (S.D.N.Y.1984) (no standing to raise rights of Congress in case involving statute providing for one-house veto); *United States v. Sutton*, 585 F.Supp. 1478 (N.D.Okla.1984) (no standing where veto not exercised, for no showing of injury). To have standing, a defendant must be "affected by the particular feature alleged to be in conflict with the constitution." *Commonwealth v. Dodge*, 287 Pa.Super. 148, 153, 429 A.2d 1143, 1146 (1981). *See also Commonwealth v. Haldeman*, 288 Pa. 81, 135 A. 651 (1927). Here, appellant has been affected by the allegedly unconstitutional guidelines. Having committed crimes after the purported effective date of the guidelines, July 22, 1982, appellant was sentenced by a judge who in arriving at the sentence, considered the guidelines,[13] as the Act of 1978 required the judge to do. If the judge should not have considered the guidelines, because they are invalid as adopted pursuant to an unconstitutional Act, then appellant has been injured, and he is entitled to be resentenced without reference to the guidelines. In *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), it was argued that the appel-

**13.** At the beginning of the sentencing hearing, the sentencing judge specifically noted the recommended guideline ranges for burglary and robbery, *see* N.T. 10/11/83, 3–4, and there can be no question that the judge considered the guidelines in the determination of sentence. *See* slip op. of tr. ct. at 8. As required under 204 Pa.Code § 303.1(b), the sentencing guidelines forms were included in the records of both appeals, No. 2803 Philadelphia 1983 and No. 2804 Philadelphia 1983.

lant lacked standing to challenge the constitutionality of a provision in a statute authorizing one House of Congress to veto the decision of the Executive Branch to allow him, a deportable alien, to remain in the United States. The argument was that "Chadha [the appellant] lacks standing because a consequence of his prevailing will advance the interests of the Executive Branch in a separation of powers dispute with Congress, rather than simply Chadha's private interests." *Id.* at 935, 103 S.Ct. at 2776. Rejecting this argument, the Court held:

> Chadha has demonstrated "injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury...." [citation omitted]. If the veto provision violates the Constitution, ... the deportation order against Chadha will be cancelled. Chadha therefore has standing....
>
> *Id.*

This reasoning is equally persuasive here. Indeed, if appellant does not have standing to challenge his sentence as imposed on consideration of invalid guidelines, it is difficult to conceive who would have standing.

–4–

In explaining my conclusion, noted at the beginning of this opinion, that Section 3 of the Act of 1978 is unconstitutional, I shall not discuss all of the arguments that have been made to us,[14] for I should find one argument dispositive. This argument may be summarized as follows: The Pennsylvania Constitution provides that the legislative power of the Commonwealth is vested in both Houses of the General Assembly, and may be exercised only with the concurrence of both Houses and after presentment to the

14. These arguments include arguments presented by amici, Defender Association of Philadelphia, Public Defender Association of Pennsylvania, and the Pennsylvania District Attorneys Association. Although Pa.R.A.P. 521(a) requires that the Attorney General be notified when the constitutionality of a statute is challenged, and here no such notice appears to have been given, cases in which the Commonwealth is a party are excluded from this requirement. *See Commonwealth v. Bottchenbaugh*, 306 Pa.Super. 406, 452 A.2d 789 (1982).

Governor. Pa. Const. art. II, § 1; art. III, §§ 1, 4, 5 and 9; art. IV, § 15. The Act of 1978 provides that the General Assembly may reject sentencing guidelines adopted by the Pennsylvania Commission on Sentencing, 42 Pa.C.S. § 2155(b), and since a decision to reject sentencing guidelines is an exercise of legislative power, it must be made with the concurrence of both Houses and after presentment to the Governor. However, the Act of 1978 provides for only the concurrence of both Houses. *Id.* Since this provision is expressly declared to be not severable, Act of Nov. 26, 1978, P.L. 1316, No. 319, § 7,[15] the entire provision of the Act providing for the Pennsylvania Commission on Sentencing and the adoption of sentencing guidelines must be declared unconstitutional.

–a–

The Constitution of 1776, Pennsylvania's first constitution, provided for a unicameral legislature and plural executive.[16] No provision for an executive veto was included. To provide a method of checking legislative action, the Constitution required the following:

To the end that laws before they are enacted may be more maturely considered, and the inconvenience of hasty determinations as much as possible prevented, all bills of public nature shall be printed for the consideration of the people, before they are read in general assembly the last time for debate and amendment; and, except on occasions of sudden necessity, shall not be passed into laws until the next session of assembly; and for the more perfect satisfaction of the public, the reasons and motives for making such laws shall be fully and clearly expressed in the preambles.

15. This provision was repealed and added, as modified, by the Act of Oct. 5, 1980, P.L. 693, No. 142, § 218(c) (added, as modified) and (d) (repealed).

16. Pa. Const. § 2 (1776) provided that "[t]he supreme legislative power shall be vested in a house of representatives of the freemen of the Commonwealth, or state of Pennsylvania." Pa. Const. § 3 (1776) provided that "[t]he supreme executive power shall be vested in a president and council."

Pa. Const. § 15 (1776).

This governmental structure had its critics from the beginning. *See generally* R.L. Brunhouse, The Counter-Revolution in Pennsylvania 1776–1790 (1942); E. Douglass, Rebels and Democrats (1955); Ryerson, Republican Theory and Partisan Reality in Revolutionary Pennsylvania, in Sovereign States in an Age of Uncertainty (R. Hoffman and P.J. Albert eds. 1981). The critics challenged the effectiveness of the checks on legislative action,[17] but it was not until 1789 that a convention to reconsider the 1776 Constitution was convened. *See generally,* Ryerson, *supra.*

The convention resulted in Pennsylvania's second Constitution, the Constitution of 1790. This Constitution, modeled after the Federal Constitution adopted the preceding year,[18] established our present form of government, creating a bicameral legislature [19] and an executive with veto power.[20]

**17.** The legislature apparently violated both the public notice provision and the "laying over" provision. *See* A Report of the Committee of the Council of Censors 12–13 (1784). *See also* Council of Censors, January 19, 1784, in the Proceedings Relative to Calling the Convention of 1776 and 1790, at 69–75 (1825); R.L. Brunhouse, The Counter-Revolution in Pennsylvania 1776–1790 (1942); E. Douglass, Rebels and Democrats 269 (1955); A. Nevins, The American States During and After the Revolution 1775–1789, at 152 (1924).

**18.** Compare the wording of the bicameral and presentment provisions of the U.S. Constitution, art. I, §§ 1, 7, with the wording of the equivalent provisions of the 1790 Pennsylvania Constitution, art. I, §§ 1, 22, 23.

**19.** Pa. Const. art. I, § 1 (1790) provided:
> The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

This provision was not altered in subsequent constitutions: Pa. Const. art. I, § 1 (1838); Pa. Const. art. II, § 1 (1873).

**20.** Pa. Const. art. I, § 22 (1790) provided:
> Every bill, which shall have passed both houses, shall be presented to the governor. If he approve, he shall sign it; but if he shall not approve, he shall return it, with his objections, to the house in which it shall have originated, who shall enter the objections at large upon their journals, and proceed to reconsider it. If after such reconsideration two-thirds of that house shall agree to pass the bill, it shall be sent, with the objections, to the other house, by which likewise it shall be reconsidered; and if approved by two-thirds of that house, it shall be a law. But in such cases the votes of

In *Commonwealth v. Sutley*, 474 Pa. 256, 378 A.2d 780 (1977), the Supreme Court explained our form of government by saying:

> In Pennsylvania we embraced the concept of tripartite government with three equal, separate and autonomous branches in an effort to prevent governmental power from becoming concentrated into a single body. It was believed that each branch would act as a check on the other and by this diffusion of power prevent tyranny where the rights of the individual citizen would be ignored.

*Id.*, 474 Pa. at 269, 378 A.2d at 786 (citations omitted).

## –b–

It will be recalled that the Act of 1978 provides that sentencing guidelines adopted by the Pennsylvania Commission on Sentencing may be rejected by concurrent resolution of both Houses, without presentment to the Governor, 42 Pa.C.S. § 2155(b), and that here in fact both Houses did by concurrent resolution reject the guidelines adopted by the Commission, with the result that new guidelines were adopted by the Commission. The question must therefore be decided: Was the decision by both Houses to reject the

both houses shall be determined by yeas and nays, and the names of the persons voting for or against the bill shall be entered on the journals of each house respectively. If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, it shall be a law, in like manner as if he had signed it, unless the general assembly, by their adjournment, prevent its return; in which case it shall be a law, unless sent back within three days after their next meeting.

This provision was not substantially altered in subsequent constitutions: Pa.Const. art. I, § 23 (1838); Pa.Const. art. IV, § 15 (1873).

Pa.Const. art. I, § 23 (1790) provided:

Every order, resolution or vote, to which the concurrence of both Houses may be necessary (except on the question of adjournment) shall be presented to the governor, and, before it shall take effect be approved by him, or, being disapproved, shall be repassed by two-thirds of both houses according to the rules and limitations prescribed in case of a bill.

This provision was not altered in subsequent constitutions: Pa.Const. art. I, § 24 (1838); Pa.Const. art. III, § 26 (1873), renumbered in 1967, art. III, § 9.

sentencing guidelines an exercise of legislative power? For if it was, the Constitution requires presentment, from which it follows that unless it can be severed, the Act's provision that there need not be presentment renders the Act unconstitutional.

Although there is a strong presumption of constitutionality, *see Commonwealth v. Robinson,* 497 Pa. 49, 438 A.2d 964 (1981), *appeal dismissed,* 457 U.S. 1101, 102 S.Ct. 2898, 73 L.Ed.2d 1310 (1982), nevertheless, I have no doubt that in rejecting the sentencing guidelines, the two Houses engaged in an exercise of legislative power. It is within "[the] exclusive power [of the General Assembly] to determine the penological system of the Commonwealth. It alone can prescribe the punishments to be meted out for crime." *Commonwealth ex rel. Banks v. Cain,* 345 Pa. 581, 587, 28 A.2d 897, 900 (1942). *See also Commonwealth v. Sutley, supra; Commonwealth v. Glover,* 397 Pa. 543, 156 A.2d 114 (1959). Of course, as to any given offender the determination of the precise punishment is decided by the sentencing judge, that is to say, is exclusively within the judicial power. However, the sentencing judge must exercise this judicial power within the limits prescribed by the General Assembly. Two different sorts of limits may be prescribed, the first going to the nature and duration of the sentence that may be imposed, the second, to the procedure that the judge must follow in deciding upon the nature and duration of the sentence. While the Crimes Code prescribes the duration of the possible sentence for a given offense, the Sentencing Code prescribes the nature of the sentence that within this limit may be imposed (total confinement; partial confinement; probation; fine; and determination of guilt without further penalty). The Sentencing Code also prescribes the procedure that the judge must follow in deciding upon the nature and duration of the sentence. For example, the judge must consider whether factors identified in the Code as favoring probation are present, 42 Pa.C.S. § 9722; he must order a presentence investigation report, or state of record why he has not, 42 Pa.C.S. § 9731,

suspended insofar as inconsistent with Pa.R.Crim.P., Chapter 14; and he must state of record the reasons for his sentence, 42 Pa.C.S. § 9721(b). When the General Assembly by the Act of 1978 provided for sentencing guidelines, it changed the procedure that the sentencing judge had to follow. Specifically, it provided that

> [t]he court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and taking effect pursuant to section 1385 [now 2155 of Title 42] (relating to publication of guidelines for sentencing).... In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 1384 [now 2154 of Title 42] (relating to adoption of guidelines for sentencing) and made effective pursuant to section 1385 [now 2155 of Title 42], the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

> Act of Nov. 26, 1978, P.L. 1316, No. 319, § 1, 18 Pa.C.S. § 1321(b) [now 42 Pa.C.S. § 9721(b)].

When by concurrent resolution of both Houses the General Assembly rejected the sentencing guidelines that the Commission had adopted, it again changed the procedure that the sentencing judge had to follow. Without the concurrent resolution, the judge would have had to follow the guidelines adopted by the Commission. The concurrent resolution, however, rejected those guidelines as too lenient, thereby prescribing that the sentencing judge was not to consider them, but instead was to consider other guidelines, to be adopted later. This action was as much an exercise of legislative power as was the enactment of the Act of 1978 itself, or the enactment of the Crimes Code, or of the Sentencing Code.[21] The conclusion is therefore inescapable

---

**21.** In his opinion Judge WICKERSHAM suggests that "since the guidelines were not in effect at the time of the rejection, the rejection did not *change* the procedure sentencing judges would follow, but merely *maintained the status quo.*" At 576 (emphasis in original). The

that the provision of the Act of 1978, that such legislative power could be exercised *only* by the concurrent resolution of both Houses, *without* presentment to the Governor, is unconstitutional.[22]

–c–

This conclusion is not only confirmed as correct but is required by the decision of the United States Supreme Court in *Immigration and Naturalization Service v. Chadha, supra.* In *Chadha,* the Court held unconstitutional § 244(c)(2) of the Immigration and Nationality Act, which provided that a resolution by either House would invalidate a decision by the Attorney General to suspend deportation of an alien. The Court reviewed the constitutional prescrip-

difficulty with this suggestion, however, is that if the concurrent veto was not an exercise of legislative power, what was it? As Professor Goldsmith has put this point, in his article, *INS v. CHADHA* and the Nondelegation Doctrine: A Speculation, 35 Syracuse L.Rev. 749 (1984): "If ... an exercise of the veto was *not* a 'legislative' act, then perhaps the House had no business exercising it at all." *Id.* at 753. Also in this regard I note the Supreme Court's affirmance of *Consumers Union of U.S., Inc. v. Federal Trade Commission,* 691 F.2d 575 (D.C.Cir.1982) (en banc), *aff'd sub nom. United States Senate v. Federal Trade Commission; United States House of Representatives v. Federal Trade Commission,* 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1402, (1983). There, the Court of Appeals held that a concurrent veto resolution, which prevented a commission's proposed rule from taking effect, violated procedures established by the Constitution for the exercise of legislative powers. *See also Consumer Energy Council of America v. Federal Energy Regulatory Commission,* 673 F.2d 425 (D.C.Cir.1982), *aff'd sub nom. Process Gas Consumers Group v. Consumer Energy Council of America,* 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1402 (1983) (affirmance of decision holding unconstitutional one-house veto of Commission's proposed rule); *Allen v. Carmen,* 578 F.Supp. 951 (D.D.C.1983) (one-house veto of proposed administrative regulations unconstitutional).

22. This case does not raise the issue of the constitutionality of a statute requiring that before they become effective an agency's proposed guidelines must be enacted into law. *Cf.* 1983 N.Y.Laws 711; Wash.Rev.Code § 9.94A.070(1). Nor does it raise the issue of the constitutionality of a statute requiring an agency to report proposed guidelines to the legislature for their consideration and providing for their effective date at the end of a certain period of time in the absence of an act to the contrary. *Cf.* Comprehensive Crime Control Act of 1984, Act of Oct. 12, 1984, Pub.L. 98–473, Title II, §§ 217, 235, 98 Stat. 2017; Minn.Stat.Ann. § 244.09(12).

tions for bicameralism and presentment to the President, art. I, §§ 1, 7, and concluded that the Framers of the Federal Constitution had decided "that the legislative power ... [would] be exercised in accord with a single, finely wrought and exhaustively considered, procedure." 462 U.S. at 951, 103 S.Ct. at 2784. It was clear to the Court that the one-House veto was "essentially legislative in purpose and effect ... [because it] alter[ed] the legal rights, duties and relations of persons, including the Attorney General, Executive Branch officials and Chadha, all outside the legislative branch." *Id.* at 952, 103 S.Ct. at 2784. In this regard, the Court pointed out that neither House had argued that in the absence of the veto provision, it could have ordered the Attorney General to deport an alien whose deportation had been suspended. The Court summarily rejected "the suggestion that the one-House veto provision ... either removes or modifies the bicameralism and presentation requirements" that legislative action must satisfy, observing that "[t]he explicit prescription for legislative action contained in Art. I cannot be amended by legislation." *Id.* at 957 n. 22, 103 S.Ct. at 2787 n. 22. Since the one-House veto failed to satisfy the constitutional requirements of bicameralism and presentment, the Court held that the provision authorizing it was unconstitutional.

This reasoning is controlling. While *Chadha* concerned a one-House veto instead of, as here, a two-House veto, that fact is immaterial. *See Consumers Union of U.S., Inc. v. Federal Trade Commission,* 691 F.2d 575 (D.C.Cir.1982) (en banc), *aff'd sub nom. United States Senate v. Federal Trade Commission; United States House of Representatives v. Federal Trade Commission,* 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1402 (1983) (two-House veto unconstitutional). It is equally immaterial that *Chadha* arose under the United States Constitution instead of the Pennsylvania Constitution. *See* discussion, subsection a, *supra.* *See also Legislative Research Commission by Prather v. Brown,* 664 S.W.2d 907 (Ky.1984) (interpreting Kentucky Constitution); *Burstein v. Morial,* 438 So.2d 554 (La.1983)

(interpreting home rule charter); *Planned Parenthood Association v. Department of Human Resources,* 297 Or. 562, 687 P.2d 785 (1984) (en banc) (interpreting Oregon Constitution). *Compare State ex rel. Stephan v. Kansas House of Representatives,* 236 Kan. 45, 687 P.2d 622 (1984), which held provisions permitting the legislature to adopt, modify or revoke administrative rules by concurrent resolution without presentation to the governor unconstitutional under the Kansas Constitution. This conclusion was supported by federal and state decisions, 236 Kan. at 61, 687 P.2d at 636, including *Chadha, State v. A.L.I.V.E. Voluntary,* 606 P.2d 769 (Alaska 1980); *Maloney v. Pac,* 183 Conn. 313, 439 A.2d 349 (1981); *Opinion of the Justices,* 121 N.H. 552, 431 A.2d 783 (1981); *General Assembly of State of New Jersey v. Byrne,* 90 N.J. 376, 448 A.2d 438 (1982).

–d–

The remaining question is whether the unconstitutional concurrent resolution provision of Section 3 of the Act of 1978 may be severed from the other provisions of the section, so that these other provisions may remain in effect.

Under Pennsylvania rules of statutory construction, separate provisions of a statute are presumed severable.[23] However, this presumption is not available, for the Act of 1978 contained an express inseverability clause:

Section 7. The provisions of section 3 [relating to the Pennsylvania Commission on Sentencing] are not severa-

---

**23.** The Statutory Construction Act of 1972 provides:

The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925.

ble and if any provisions thereof or the application thereof to any person or circumstance is held invalid, the remainder of section 3 and section 6 [appropriating funds to the Commission] shall be invalid.

Act of Nov. 26, 1978, P.L. 1316, No. 319.[24]

Although reworded in 1980, the legislature again provided that the Act was inseverable:

(c) The provisions of subsection (a) [relating to the Pennsylvania Commission on Sentencing], 42 Pa.C.S. § 9781 (relating to appellate review of sentence), and section 6 [relating to appropriations to the Commission] of the act of November 26, 1978 (P.L. 1316, No. 319), entitled "An act amending Title 18 (Crimes and Offenses) of the Pennsylvania Consolidated Statutes, further providing for sentencing and providing for alteration of identification marks on personal property," are not severable and if any provision thereof or the application thereof to any person or circumstance is held invalid, the remainder of subsection (a), 42 Pa.C.S. § 9781 and such section 6 shall be invalid.

(d) Subchapter G of Chapter 13 (relating to Pennsylvania Commission on Sentencing) of Title 18, and sections 7 and 8(a) and (b) [of the 1978 Act] ... are repealed....

Act of Oct. 5, 1980, P.L. 693, No. 142, § 218.

These changes were made as part of the JARA Continuation Act of 1980, which transferred sections of Title 18, relating to the Commission, to Title 42. *Id.*, § 218(a).

Although this explicit expression of inseverability is by itself sufficient to overcome the presumption of severability, I have also examined the legislative record for evidence

**24.** An earlier version of the bill, Printer's No. 2164, contained only the following clause:

The provisions of 18 Pa.C.S. § 1386 (relating to appellate review of sentence) are not severable and if any provision thereof or the application thereof to any person or circumstance is held invalid, the remainder of the section shall be invalid.

S. 195, § 6.

of intent. It discloses that indeed the legislature would not have created the Commission and authorized it to adopt guidelines without at the same time reserving the power by concurrent resolution to reject those guidelines. Thus, Representative Scirica, sponsor of the bill, noted that "[b]efore the guidelines become effective, they have to be submitted in their entirety to both Houses of the General Assembly, and we have 90 days to look them over and to decide whether or not to veto them." Pa.House Leg. J., Sept. 21, 1978, at 3131. In 1981, during the debate on the concurrent resolution rejecting the guidelines adopted by the Commission, Representative Reber pointed out

> that when the guideline enactment went into effect allowing you the right to review this, it had to be for a purpose, and I submit it was just this particular purpose that we do want to look at these, if in fact they come back too lenient.

Pa.House Leg. J., Apr. 1, 1981, at 564.

*See also* Pa.House Leg. J., Apr. 1, 1981, at 566 (remarks of Rep. Hagarty). And in 1982, while debating the Senate resolution that approved the new guidelines, Senator Gekas stated:

> We will always have that ability [to reject the guidelines] because the Commission on Sentencing will continue to monitor and report to us and we as a Body will be on top of these guidelines and the sentencing procedures and the whole gamut of the judicial system having to do with sentencing from top to bottom.

Pa.Senate Leg. J., Apr. 20, 1982, at 2160.

(I note in passing that one legislator correctly described the two-House veto as an "end run" around the constitutional requirements applicable to the exercise of legislative power:

> I cannot sit down without being critical of the way this whole issue comes before us. It is really being done by an end run and I think the proponents of this very involved sentencing guideline device realize it would have

a hard time getting through the Legislature on its own merits.

Pa.Senate Leg. J., Apr. 20, 1982, at 2164 (remarks of Sen. Snyder).)

Since the legislature thus made plain its intention that the provisions of Section 3 of the Act of 1978 should be "essentially and inseparably connected," 1 Pa.C.S. § 1925, note 23, *supra*, the conclusion that the concurrent veto resolution provision of the Section is unconstitutional renders the entire Section unconstitutional. The judgment of sentence should therefore be vacated and the case remanded for resentencing under the Sentencing Code.[25]

–5–

I should not apply this decision retroactively,[26] for I have reviewed the various factors used to resolve the issue of retroactivity, and have concluded that sentences imposed since the effective date of the 1982 guidelines need not be vacated. *See Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Commonwealth v. Cain*, 471 Pa. 140, 369 A.2d 1234 (1977) (aff'd by an equally divided court) (EAGEN, J., Opinion in Support of Affirmance, joined by JONES, C.J., and POMEROY, J.); *Commonwealth v.*

**25.** The legislatively-set interim guidelines, *see* note 6, *supra*, apparently would not be applicable in this case.

**26.** The question of retroactivity is not strictly before this court. However, given the potential impact of a decision holding the guidelines unconstitutional, I nevertheless address that issue. *Compare Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), where the Supreme Court addressed, without explanation, the retroactivity of its decision affirming a District Court holding that Congressional delegation of jurisdiction to bankruptcy judges under the Bankruptcy Act of 1978 violates Art. III of the Constitution.

Although I should conclude that a decision holding the guidelines unconstitutional should not be applied retroactively, appellants who have raised and properly preserved the issue posed by this appeal—that the guidelines are unconstitutional for lack of presentment of the concurrent resolution—should receive the benefits of such a decision. *Cf. Shea v. Louisiana*, —— U.S. ——, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985); *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

*Godfrey,* 434 Pa. 532, 254 A.2d 923 (1969); *Commonwealth v. Parrott,* 287 Pa.Super. 83, 429 A.2d 731 (1981).

A decision that the two-House veto resolution is unconstitutional was not foreshadowed in previous decisions. Indeed, this court has interpreted various aspects of the sentencing guidelines without intimating that fundamental constitutional problems existed in the Act of 1978. *See, e.g., Commonwealth v. Rainey,* 338 Pa.Super. 560, 488 A.2d 34 (1985); *Commonwealth v. Rivera,* 338 Pa.Super. 199, 487 A.2d 923 (1985); *Commonwealth v. Smith,* 333 Pa.Super. 179, 481 A.2d 1365 (1984); *Commonwealth v. Royer,* 328 Pa.Super. 60, 476 A.2d 453 (1984). The parties have pointed out only two other instances in Pennsylvania law that might pose the same constitutional issue raised in this case,[27] and in these instances, the issue apparently has not been raised. Moreover, until *Chadha,* there was no indication from the United States Supreme Court that Congress' incorporation of legislative review mechanisms violated the Constitution. *See Exxon Corp. v. U.S. Department of Energy,* 744 F.2d 98 (Em.Ct.App.), *cert. denied sub nom. Energy Reserves Group, Inc. v. Department of Energy,* —— U.S. ——, 105 S.Ct. 576, 83 L.Ed.2d 515 (1984) (*Chadha* not retroactive in part because *Chadha* posed issue of first impression not clearly foreshadowed by earlier cases).

In addition, retroactive application of a holding to the effective date of the 1982 guidelines, July 22, 1982, would not further the purpose of the holding, *i.e.,* to preclude continued violation of the presentment provision by the legislature enacting review mechanisms not requiring executive consideration. *See Exxon Corp. v. U.S. Department of Energy, supra.* It is obvious that my conclusion that Section 3 of the Act of 1978 is unconstitutional does not affect the truth-finding process, which has been a signifi-

27. *See* Regulatory Review Act, Act of June 25, 1982, P.L. 633, No. 181, 71 P.S. § 745.1 et seq.; Sunset Act, Act of Dec. 22, 1981, P.L. 508, No. 142, as amended, 71 P.S. § 1795.1 et seq. (Attorney General Official Opinion, No. 84–3, advised the governor that Sunset Review Resolutions continuing certain bodies are subject to the presentment clause).

cant fact in determining retroactivity, *see Commonwealth v. Cain, supra,* 471 Pa. at 162, 164, 166, 369 A.2d at 1245–47 (1977) (EAGEN, J., Opinion in Support of Affirmance, joined by JONES, C.J., and POMEROY, J.), and it does not follow that because a sentence was imposed upon consideration of the guidelines, the sentence was unfair.

Finally, to apply a decision of unconstitutionality retroactively would disrupt the already over-burdened criminal justice system. *Cf. Commonwealth v. Cain, supra,* 471 Pa. at 163, 369 A.2d at 1245–46 (EAGEN, J., Opinion in Support of Affirmance, joined by JONES, C.J., and POMEROY, J.). According to the Pennsylvania Commission on Sentencing, 29,908 sentences, on 20,529 separate forms, were reported during 1983, as having been imposed for offenses occurring on or after the effective date of the guidelines. Sentencing in Pennsylvania ii (June 1984). *Cf. Exxon Corp. v. U.S. Department of Energy, supra* at 114. These figures suggest the magnitude of the problem if a decision of unconstitutionality were applied retroactively: it would create havoc. *Cf. Commonwealth v. Godfrey, supra,* 434 Pa. at 536–37, 254 A.2d at 925; *Commonwealth v. Oliver,* 251 Pa.Super. 17, 22–23, 379 A.2d 309, 312 (1977); *Commonwealth v. Lockhart,* 227 Pa.Super. 503, 507–08, 322 A.2d 707, 709 (1974).

For each of these reasons, I should hold that the decision that Act of 1978 is unconstitutional should be applied prospectively only.

The judgment of sentence in No. 2802 Philadelphia 1983 should be affirmed.

The judgments of sentence in No. 2803 Philadelphia 1983 and No. 2804 Philadelphia 1983 judgment of sentence should be vacated and the case should be remanded for resentencing in accordance with this opinion.

OLSZEWSKI, MONTEMURO and TAMILIA, JJ., join this dissenting opinion.