504 A.2d 197

**COMMONWEALTH of Pennsylvania**

v.

**Barry MOURAR, Appellant.** [1]

Superior Court of Pennsylvania.

Argued Dec. 13, 1984.

Filed Jan. 21, 1986.

1. This case is a companion case to *Commonwealth v. Kuphal,* 347 Pa.Super. 572, 500 A.2d 1205 (1985); *Commonwealth v. Bates,* 02941 Philadelphia 1983; and *Commonwealth v. Sessoms,* 01999 Philadelphia 1983.

William J. Honig, Norristown, for appellant.

Joseph W. Carroll, III, West Chester, Deputy District Attorney, for Com., appellee.

Before SPAETH, President Judge, and CAVANAUGH, WICKERSHAM, ROWLEY, OLSZEWSKI, MONTEMURO, BECK, TAMILIA and JOHNSON, JJ.

PER CURIAM:

Appellant Barry Mourar entered a guilty plea to four criminal violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa.S. § 780–101 *et seq.* Three of the four offenses occurred after the effective date of the Sentencing Guidelines, 204 Pa.Code § 303 *et seq.*

Appellant was sentenced on October 19, 1983. For the first offense of delivering cocaine on July 13, 1982, appellant was sentenced to a period of seven to fourteen months imprisonment. When sentencing on the second count of

delivering cocaine on August 27, 1982, the trial judge considered the first offense to be a prior conviction and added two points to appellant's prior record score. Thus, appellant was sentenced to ten to twenty months on the second count. Both offenses were then counted as prior convictions for purposes of sentencing on the third charge of delivering cocaine on November 19, 1982, and appellant was sentenced to sixteen to thirty-two months imprisonment. On the final offense of possession with intent to deliver cocaine on December 3, 1982, appellant's prior record score resulted in a sentence of twenty-two to forty-two months. All sentences were to run consecutively, for a total sentence of four and one-half to nine years imprisonment. Appellant was also ordered to make restitution of $6,500.00, the amount spent by Government undercover agents to make the purchases that ultimately led to the filing of charges against appellant.

Appellant raises five issues on appeal. First, he contends that his sentence is illegal because the sentencing guidelines are illegal. In *Commonwealth v. Kuphal,* 347 Pa.Super. 572, 500 A.2d 1205 (1985), we held that the sentencing guidelines are constitutional. Therefore, we will not address this issue further. Appellant also argues that the guidelines were improperly applied; that the order requiring him to pay restitution is illegal; that the trial court erred in denying his petition to withdraw his guilty plea; and that the sentences were excessive. We vacate the judgment of sentence and remand for re-sentencing under the appropriate interpretation of the guidelines and for a full hearing and determination on the matter of restitution.

### I. Sentencing Guidelines

■ Section 303.6 of the sentencing guidelines, 204 Pa. Code § 303.6, provides as follows:

(a) When imposing consecutive sentences for convictions arising out of the same transaction, the prior record score is computed for the offense with the highest offense gravity score in such transaction. For the remain-

ing offenses in such transaction, the prior record score shall be zero.

(b) When imposing consecutive sentences for convictions arising out of separate transactions, the prior record score shall be computed independently for each conviction.

The prior record score is determined by § 303.7 which provides for various numbers of points to be added to the prior record score depending on the type of prior crime of which the defendant was convicted. Subsection (g) of § 303.7 defines a prior conviction as

a case in which a verdict of guilty has been entered in the record and sentence has been imposed for an offense which occurred prior to the date of the current offense, notwithstanding any appeal taken on the prior offense.

In the instant case, when imposing consecutive sentences, the trial court interpreted § 303.7 to mean that when multiple sentences are imposed on the same occasion, those pronounced first could be used cumulatively as prior offenses for enhancement purposes. We find this construction, and the resultant escalation of punishment, inimical both to the concept of substantial justice and to the manifest intention of recidivist provisions generally.

The resolution of the issue lies in the rules of statutory interpretation. Despite appellee's contention that the trial court clearly complied with the definition of "prior conviction" in § 303.7 when imposing appellant's sentences, we find that application of the Statutory Construction Act, 1 Pa.C.S. § 1928(b)(1), operates to produce a far different result, since the provision is penal and must be interpreted strictly. Further, § 303.7 does not exist in a vacuum; it must be read in conjunction with the other guidelines and the statute authorizing their promulgation so as to give effect to all. 1 Pa.C.S. § 1922. It also must be interpreted in light of existing Pennsylvania law.

A brief history of the habitual criminal statute in Pennsylvania prior to adoption of the Sentencing Guidelines is instructive. We begin by noting that at least as long ago as

1860, legislation which addressed the proper disposition of persistent offenders contained language as imprecise as that of the guidelines,[2] as have some regulatory statutes which mandate penal sanctions for multiple violations (and which have found their way into case authority).[3] Contrary

2. Act Mar. 31, 1860, P.L. 382, § 182, 18 P.S. § 3731.

If any person convicted of any offense other than murder of the second degree, for which the punishment prescribed by this Code is imprisonment by solitary or separate confinement at labor, shall, after such conviction, be guilty of a similar offense, or of any offense for which said punishment is directed, he shall, in either case, upon conviction, be sentenced to undergo an imprisonment and be kept at labor, not exceeding double the whole period of time which may be the penal laws of this commonwealth be prescribed for the crime of which he is convicted.

Act April 29, 1929, P.L. 854, 19 P.S. § 921.

SENTENCE ON SECOND OR SUBSEQUENT CONVICTION

§ 921. Sentence upon subsequent conviction within five years

Any person who, after having been convicted within or without this Commonwealth of the crime, or attempt to commit the crime, of treason, murder, voluntary manslaughter, sodomy, buggery, burglary, entering with intent to steal, robbery, arson, mayhem, kidnapping, sale of narcotics, perjury, abortion, pandering, incest, or any offense committed or attempted to be committed through the instrumentality of or with the aid of a deadly weapon or gunpowder or other explosive substance or corrosive fluid, may, upon conviction of any of such crimes for a second offense committed within five years after the prior offense, be sentenced to imprisonment for a term the maximum of which shall not be more than twice the longest term prescribed upon a first conviction for the crime in question.

Act of June 24, 1924, P.L. 872, § 1108, 18 P.S. § 5108.

§ 5108. Second and subsequent offenses

Second and subsequent offenses

(a) Whoever after having been convicted within or without this Commonwealth of the crime, or attempt to commit the crime, of treason, murder, voluntary manslaughter, sodomy, buggery, burglary, entering with intent to steal, robbery, arson, mayhem, kidnapping, sale of narcotics, perjury, abortion, pandering, incest, or any offense committed or attempted to be committed through the instrumentality of or with the aid of a deadly weapon or gunpowder or other explosive substance or corrosive fluid, may, upon conviction of any of such crimes for a second offense committed within five (5) years after the first offense, or subsequent offense committed within five (5) years after the prior offense, be sentenced to imprisonment for a term, the maximum of which shall not be more than twice the longest term prescribed upon a first conviction of the crime in question.

3. Act of May 29, 1901, P.L. 327 (No. 208) § 7

In addition to the above penalty [fine], every person ... who violates any of the provisions of this act shall also be guilty of a

misdemeanor; and upon conviction thereof, shall be punished for the first offense by a fine of not less than 100 dollars, nor more than 500 dollars, or by imprisonment in the county jail for not more than three months, or both at the discretion of the court; and upon conviction of any subsequent offense, shall be punished by a fine of not less than 500 dollars, nor more than 1,000 dollars, and by imprisonment in the county jail for not less than six months nor more than twelve months.

Act of Mar. 22, 1867, Sect. 4, Pamph. L.41. 2 Br.Purd. 947, p. 51

Section 4. If any person, after the passage of this act, shall sell spirituous and vinous liquors ..., without having obtained a license ... such person shall, on conviction ... be fined, for the first offense, in any sum not less than 50 nor more than 200 dollars, and for the second, or any subsequent offense, such person shall be fined not less than 100 dollars, and in the discretion of the said court, be imprisoned in the county jail not less than 30 days, nor more than 90 days.

Act of May 31, 1933 P.L. 1116, as amended Act of June 5, 1937, P.L. 1672

Section 9(a) Any person ... violating any of the provisions of this act, ... shall, [be guilty of a misdemeanor and] for the first or second offense, upon conviction thereof [shall] ... be sentenced to pay a fine ... or in default of such fine and costs ... to undergo an imprisonment in the county jail ... and for a third or subsequent offense, shall be guilty of a misdemeanor, and sentenced to pay a fine ... or ... to undergo an imprisonment ... or both, in the discretion of the court.

Act of May 5, 1899, P.L. 241

Section 4 ...

Any person ... who shall manufacture, sell ... oleo margaring or butterine ... in violation of any of the provisions of this act ... shall also be guilty of a misdemeanor, and upon conviction thereof shall be punished for the first offense by a fine ... and upon his conviction for any subsequent offense shall be punished by a fine ... or by imprisonment ... or by both ... at the discretion of the court.

Act of April 14, 1972, P.L. 233 No. 64 as amended Oct. 26, 1972, P.L. 1048, § 263, 35 Pa.S.A. § 780–113(b)

(b) Any person who violates any of the provisions of clauses (1) through (13) and (15) through (2) of subsection (a) shall be guilty of a misdemeanor, and except for clauses (4), (6), (7), (8), (9) and (19) shall, on conviction thereof, be sentenced to imprisonment not exceeding one year or to pay a fine not exceeding five thousand dollars ($5,000), or both, and for clauses (4), (6), (7), (8), (9) and (19) shall, on conviction thereof, be sentenced to imprisonment not exceeding three years or to pay a fine not exceeding five thousand dollars ($5,000), or both; but, if the violation is committed after a prior conviction of such person for a violation of this act under this section has become final, such person shall be sentenced to imprisonment not exceeding three years or to pay a fine not exceeding twenty-five thousand dollars ($25,000), or both.

to the trial court's inclusion of immediacy into the concept of priority in this case, in all of the Pennsylvania cases interpreting the prior recidivist statutes the priority of a conviction lies in its preceding commission of the offense to be enhanced. *Commonwealth ex rel. Turpack v. Ashe*, 339 Pa. 403, 15 A.2d 359 (1940); *Commonwealth v. McDermott*, 224 Pa. 363, 73 A. 427 (1909); *Rauch v. Commonwealth*, 78 Pa. 490 (1875); *Commonwealth v. Lane*, 236 Pa.Super. 462, 345 A.2d 233 (1975); *Commonwealth v. Calio*, 155 Pa.Super. 355, 38 A.2d 351 (1944); *Commonwealth ex rel. Flory v. Ashe*, 132 Pa.Super. 405, 1 A.2d 685 (1938); *Commonwealth v. Sutton*, 125 Pa.Super. 407, 189 A. 556 (1937); *Commonwealth v. Neill*, 16 Pa.Super. 210 (1901). The antiquity of this concept does nothing to diminish its validity.

The hypothesis that prior *convictions* must antedate commission of the principal offense to be eligible for application as sentence enhancers is, in fact, the majority rule in this country, Annot., 24 A.L.R.2d 1247, and not only the traditional approach in this Commonwealth.[4] In fact, the "rule

---

**4.** Alabama, Code 1975 § 13A–5–9
Alaska, AS 12.55.185 *State v. Rastopsoff*, 659 P.2d 630 (1983)
Arizona, A.R.S. § 13–604(A)
Colorado, C.R.S. 1973 16–13–101(1)
Connecticut, C.G.S.A. § 53a–40
District of Columbia, D.C.Code 1981, § 22–104(a)(2)
Florida, WEST's F.S.A. § 775.084
Georgia, O.C.G.A. § 17–10–7
Illinois, S.H.A. ch. 38 § 1005–5–3(c)(8)
Indiana, IC 35–50–2–8 (1985 Supp.)
Iowa, I.C.A. § 902.8 *State v. Hollins*, 310 N.W.2d 216 (1981)
Kentucky, KRS 532.080
Louisiana, LSA–R.S. 15:529.1
Maryland, Code 1957 Art. 27 § 643B(c)
Michigan, M.C.L.A. § 750.227b, *People v. Sawyer*, 410 Mich. 531, 302 N.W.2d 534 (1981)
Minnesota, M.S.A. § 609.11 sub. 1, .155 sub. 2, .225 sub. 2
Missouri, V.A.M.S. § 558.016 *State v. Medley*, 588 S.W.2d 55 (1979); *State v. Ryder*, 598 S.W.2d 526 (1980)
Montana, MCA 46–18–501
Nevada, N.R.S. 207.010 *Brown v. State*, 97 Nev. 101, 624 P.2d 1005 (1981).
New Jersey, 2C:44:4 *State v. Rowe*, 140 N.J.Super. 5, 354 A.2d 701 (1976) att'd 81 N.J. 296, 406 A.2d 169

[is] that a second offense, carrying with it a severer penalty is not, in legal contemplation committed until there has been a conviction for a first offense." *Id.*

Thirty-one states have habitual criminal statutes, or case authority which expressly defines prior convictions as those which have preceded commission of the principal offense. The reasoning is consistent with the notion that:

> Legislation authorizing the imposition of increased punishment on recidivists is directed at those who persist in criminality after having once been convicted of an offense. It is thus generally essential that the alleged conviction shall have preceded the date of the offense for which the increased punishment is sought to be imposed.

39 Am Jur.2d Habitual Criminals § 6. The theme is constant and unwavering, with only one exception in this Commonwealth,[5] and can be extrapolated as well from section 303.7(g) as from previous statutory provisions.

Guidance on this point may be drawn from 42 Pa.C.S. § 9714(b)[6] which designates a five-year enhancement for

New Mexico, NMSA 31–18–17 *State v. Rogers,* 93 N.M. 519, 602 P.2d 616 (1979); *State v. Linam,* 93 N.M. 307, 600 P.2d 253 cert. denied 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979)
New York, Penal Law 70.06 1.(b)ii
North Carolina, G.S. § 14–7.1
Ohio, R.C. 2929.01(A)(1), (4)
Oklahoma, 21 O.S.1981, § 51(A)
Oregon, ORS § 161.725(4)(b)
South Carolina, Code § 17–25–45(1)(C)
Texas, V.T.C.A. Penal Code § 12.34, .42(a) *Seals v. State,* 634 S.W.2d 899 (1982)
Washington, RCWA 9.92.090 *State v. Rinier,* 93 Wash.2d 309, 609 P.2d 1358 (1980)
West Virginia, Code 62–12–18 *Wanstreet v. Bordenkircher,* 276 S.E.2d 205 (1981)
Wisconsin, W.S.A. 939.62(2)
See also ABA Standards for Criminal Justice, Sentencing and Corrections, § 3–105; 18 U.S.C.A. § 3575(e)(1).

**5.** *Commonwealth v. Vandemark,* 65 Pa. D & C 351 (1948).

**6.** § 9714. Sentences for second and subsequent offenses
 (a) Mandatory sentence.—Any person who is convicted in any court of this Commonwealth of murder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, arson as defined in 18 Pa.C.S. § 3301(a) (relating to arson and related of-

594

recidivist perpetrators of certain enumerated violent crimes. Unless this section is read to provide not only a *terminus a quo* but also *ad quem* for prior offenses, it makes no sense, and when aligned with section 303.7(g), must require that *conviction* for the (enhancing) offense predate commission of the principal offense to escape the imputation of a sophistic intent to both. Section 303.6,[7] which appellant utilizes as a counterpoint, refers only to computations internal to each conviction, not cumulative application of sepa-

fenses), kidnapping or robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), or attempt to commit any of these crimes, or who is convicted of aggravated assault in which the offender intentionally, knowingly or recklessly causes serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life, shall, if they have previously been convicted of a crime of violence as specified in subsection (b), be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary.

(b) Prior convictions for crimes of violence.—For the purposes of subsection (a), an offender shall be deemed to have prior convictions for crimes of violence if both of the following conditions hold:

(1) The offender was previously convicted in this Commonwealth or any other state or the District of Columbia or in any Federal court of murder, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa.C.S. § 3701(a)(i), (ii) or (iii), arson as defined in 18 Pa.C.S. § 3301(a), kidnapping or aggravated assault in which the offender intentionally, knowingly or recklessly causes serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life, an equivalent crime under the laws of the Commonwealth in effect prior to the effective date of Title 18 (relating to crimes and offenses) or an equivalent crime in another jurisdiction. The previous conviction need not be for the same crime as the instant offense for this section to be applicable.

(2) *The previous conviction occurred within seven years of the date of the commission of the instant offense,* except that any time during which the offender was incarcerated in any penitentiary, prison or other place of detention shall not be considered in computing the relevant seven-year period. Convictions for other offenses arising from the same criminal episode as the instant offense shall not be considered previous convictions for the purpose of this section. A previous conviction shall include any conviction, whether or not litigation is pending concerning that conviction.

7. 204 Pa.Code § 303.6 Consecutive sentences.

(b) When imposing consecutive sentences for convictions arising out of separate transactions, the prior record score shall be computed independently for each conviction.

rate convictions to each other. We find this consistent with the traditionally accepted distinction between multiple offenders and habitual offenders, with section 303.6 relevant only to the former and section 303.7(g) to the latter. Were this not true, the consequences would be ludicrous since not only charging, but sentencing, would, in effect, be delegated to the district attorney's office, which may, by the simple expedient of charging incidents separately which allow any argument supporting individuation, assure longer penalties than the law might otherwise allow.

When a criminal statute is susceptible of two constructions, both reasonable, it is not the construction that is supported by the greater reason that is to prevail but the one that operates in favor of the defendant's liberty. *Commonwealth v. Smith*, 333 Pa.Super. 155, 481 A.2d 1352, 1355 (1984) (citations omitted). This principle is, in turn, consistent with the theory underlying persistent criminal legislation, viz. that:

> It was not intended that the heavier penalty prescribed for the commission of a second offence should descend upon anyone, except the incorrigible one, who after being reproved, 'still hardeneth his neck.' If the heavier penalty prescribed for the second violation ... is visited upon the one who has not had the benefit of the reproof of a first conviction, then the purpose of the statute is lost.

*Commonwealth v. Sutton*, 125 Pa.Super. 407, 189 A. 556 (1937) (citations omitted).

■ We do not deny the propriety of consideration by the court of other offenses in determining sentence. "Prior connections, of whatever nature, with law enforcement authorities are unquestionably among the circumstances to be scrutinized [in sentencing]." *Commonwealth v. Lupatsky*, 341 Pa.Super. 338, 491 A.2d 845 (1985) (citations omitted). This prosecution for four offenses was, however, appellant's first contact with the criminal justice system. He has had no opportunity to benefit from the salutary effect of penal discipline and is, therefore, *not* an habitual offender. He should not, then, be treated as one. Our holding here is consistent with the decision of a panel of our Court in

*Commonwealth v. Wolfe,* 349 Pa.Super. 415, 503 A.2d 435 (1986).

Penal statutes are designed to make the punishment fit the crime, and the guidelines to regularize this notion without poaching on judicial preserves. That this is clear can be seen from the fact that the highest minimum sentence available under the guidelines, an aggregate of four to eight years (that is four consecutive twelve month minimums), closely and legally approximates the four and one-half to nine year sentence actually imposed.[8]

We do not believe, as appellant argues, that these crimes were part of a single criminal episode, by which we assume that he objects not only to geometrically increased sentences, but to consecutive ones. He has committed multiple crimes, for which he may receive serial penalties. It is only the logic behind the sentence and not necessarily the length to which we take exception. We will, therefore, vacate the judgments of sentence and remand to the lower court for resentencing in accordance with these precepts.

## II. Restitution

### A.

Since we are remanding this case for resentencing, it is appropriate to consider appellant's sentencing issue. Appellant contends that the order of restitution was illegal because he was ordered to make restitution to the Pennsylvania Bureau of Drug Control and the Chester County Detectives Office, neither of which is a "victim" within the meaning of the restitution statute.

> The restitution statute provides that "restitution" is The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.

18 Pa.C.S. § 1106(h). "Victim" is defined as:

> Any person, except an offender, who suffered injuries to his person or property as a direct result of the crime.

---

8. The aggregate statutory maximum for appellant's offenses is 80 years.

18 Pa.C.S. § 1106(h). The issue of whether government agencies and offices can be included within the definition of "victim" is one of first impression in this Commonwealth. Other jurisdictions, however, have considered the issue.

In *Evans v. Garrison*, 657 F.2d 64 (4th Cir.1981), the Fourth Circuit Court of Appeals, applying North Carolina law, held that the court could not impose an order of restitution to be paid to the North Carolina Bureau of Investigation Drug Division for expenses it had incurred while investigating the charges and obtaining the proof which led to the defendant's guilty plea. In reaching this conclusion, the court examined the North Carolina restitution statute which provided that a defendant could be required to make restitution to "an aggrieved party or parties." 15A–1343(d), N.C.G.S. This same statute also provides that a government agency can be an aggrieved party but "no government agency shall benefit by way of restitution ... except for particular damage or loss to it over and above its normal operating costs." The court determined that money expended investigating the drug offenses was among the Bureau's normal operating expenses and therefore, restitution could not be made to it.

In *People v. Evans*, 122 Ill.App.3d 733, 78 Ill.Dec. 50, 461 N.E.2d 634 (1984), the Illinois Court reached a similar result. However, under Illinois law, the statute providing for restitution provides no separate definition of "victim" but simply states "the defendant shall make restitution to the victim...." Ill.Rev.Stat.1979, ch. 38, par. 1005–5–6. The court stated:

> While certainly we would be remiss were we to hold that unlawful delivery of a controlled substance is a victimless crime, we would be blinking reality were we not to acknowledge that many, if not most, offenders are brought to justice through the efforts of undercover agents making buys with public monies. We will not, however, strain the commonly accepted understanding of the word "victim" so as to include the public drug enforcement agency, MEG, in the case before us. Where

public monies are expended in the pursuit of solving crimes, the expenditure is part of the investigating agen-. cy's normal operating costs. ' The governmental entity conducting an investigation is not therefore considered a "victim" to the extent that public monies are so expended. *Evans v. Garrison* (4th Cir.1981), 657 F.2d 64.

*People v. Evans, Id.* at 740, 78 Ill.Dec. at 55, 461 N.E.2d at 639.

In *Oregon v. Pettit,* 73 Or.App. 510, 698 P.2d 1049 (1985), however, the Court of Appeals of Oregon held that restitution could be ordered to the city's police department for money used to purchase cocaine from the defendant during the course of the criminal investigation against him. The Oregon statute provides that the court may order a defendant to make restitution to the "victim". ORS 137.106. "Victim" is defined as " . . . any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities; 'victim' shall not include any coparticipant in the defendant's criminal activities." ORS 137.103(4). The court determined that if the police department had suffered "pecuniary damages", then it was a "victim". After analyzing the statutory definition for "pecuniary damages", the court concluded that the police department was a victim.

Comparing these three cases to the issue before us, it is obvious that the Oregon statute most closely parallels our statute. The language of the North Carolina statute which led to the court's holding that the drug enforcement bureau was not a victim is conspicuously absent from the Pennsylvania law. Therefore, we do not find the decision in *Evans v. Garrison* relevant. The Illinois court, which had no statutory definition to assist it in determining whether the drug enforcement agency could be a victim, followed the decision in *Evans v. Garrison.* Thus, for the same reason that we do not find *Evans v. Garrison* relevant, we do not find *People v. Evans* applicable to our case. However, the restitution statute of Oregon, which the court interpreted in *Pettit,* is similar to Pennsylvania's statute: both describe

"victim" as "any person" who suffers injuries to his person or property (Pennsylvania) or pecuniary damages (Oregon) as a result of the defendant's crime. Therefore, we find *Pettit* to be most persuasive in resolving the issue before us.

In *Pettit*, the court stated that the only limitation on the city police department being a victim was whether the department suffered pecuniary damages. If this analysis is applied to the Pennsylvania statute, the only inquiry where restitution is to be made to a drug enforcement agency is whether the agency suffered an injury to its person or property. 18 Pa.C.S. § 1106(h) defines "injury to property" as "loss of real or personal property, including negotiable instruments, or decrease in its value, directly resulting from the crime." There can be little doubt that when the drug enforcement agencies in this case purchased the cocaine from appellant, the money used to purchase the drugs was "lost" because the agency received nothing legal in exchange for its money. Therefore, we hold that a governmental agency can be a "victim" as that term is used in 18 Pa.C.S. § 1106 and that the order of restitution in this case which was made payable to the Pennsylvania Bureau of Drug Control and the Chester County Detectives Office, was proper.

## B.

Appellant also argues, however, that the record does not support an order of restitution against him and that the court did not consider the required factors in imposing the sentence of restitution. After thoroughly reviewing the record, we conclude that the record amply supports an order of restitution. However, because the record does not disclose appellant's ability, either now or in the future, to make restitution, and the court did not determine in what manner the restitution should be made, we must vacate the order and remand for a new hearing.

Restitution can be imposed either as a condition of probation or parole or as a direct sentence. 18 Pa.C.S. § 1106 and 42 Pa.C.S. § 9721(c). In both instances the order to make restitution has dual purposes: to rehabilitate the defendant and to provide some recompense to the victim. *Commonwealth v. Fuqua*, 267 Pa.Super. 504, 407 A.2d 24, (1979). However, the primary concern in imposing a sentence of restitution is to promote the rehabilitation of the defendant and to impress upon him the responsibility he must accept for his actions. *Id.*, 267 Pa.Superior Ct. at 508, 407 A.2d at 26. To accomplish this end, the court must ensure that the restitution exceeds neither the defendant's ability to pay nor the victim's damages. *Id.*

Where the defendant is sentenced to pay restitution, the court must conduct a hearing to establish a record to support the order of restitution. *Commonwealth v. Valent*, 317 Pa.Super. 145, 463 A.2d 1127 (1983). The Statute provides that the court "shall consider the extent of injury suffered by the victim and such other matters as it deems appropriate." 18 Pa.C.S. § 1106(c). In *Fuqua*, the court delineated the factors which the court should consider: "the extent of the injury suffered, the fact that the defendant's action caused the injury and that he will be able to pay for it; and the type of payment—lump sum or installment—that will best serve the needs of the victim and the capabilities of the defendant." *Fuqua, Id.* 267 Pa.Super. at 510, 407 A.2d at 27, citations omitted.

When an order of restitution is made, the amount of restitution must necessarily be ordered at the time of sentencing because it is part of the punishment imposed for the crime. This is so even when a defendant is sentenced concommitantly to a period of incarceration and may not be able to fulfill the sentence of restitution immediately.

We recognize that, in most cases, when a court sentences the defendant to a period of incarceration and the defendant is serving the period of incarceration, his income will frequently be drastically diminished and consequently

he may not be able immediately to satisfy the sentence of restitution. In fact, some defendants, at the time of sentencing, will have already been incarcerated for a substantial period of time, and will have no income from which to pay restitution. However, a defendant's inability to presently pay restitution at the time of sentencing or immediately thereafter does not impede the court's authority to sentence the defendant to pay restitution if at the time of sentencing the record establishes the future possibility of the defendant satisfying the sentence of restitution. "There is no rule of law which holds that a defendant can be ordered to make restitution only if he has a *present* financial ability to make immediate restitution." [emphasis added]. *Commonwealth v. Galloway*, 302 Pa.Super. 145, 165, 448 A.2d 568, 579 (1982), concurring opinion of Wieand, J. Thus, in determining the defendant's ability to pay an order of restitution, the court can consider the education, vocational training, and employment history of the defendant as they may affect the defendant's future ability to make restitution in addition to considering any assets which defendant may have at present or is likely to acquire in the future and any present income.

In *Commonwealth v. Wood*, 300 Pa.Super. 463, 446 A.2d 948 (1982), the Court upheld a sentence of restitution in which the hearing to determine, inter alia, the defendant's ability to pay and the manner of payment. was deferred until after he had been released on parole. At the hearing, the court considered that defendant was no longer a drug addict, had a regular weekly income, had no mental or physical impairment which would diminish his ability to be employed, and had an average intelligence. It would have been impossible for the court to have determined at the time of sentencing the amount of defendant's income upon release from prison as well as the fact that he would remain drug free. Yet these factors were considered in determining the defendant's ability to pay restitution after he was released on parole. Thus, we hold that when, at the time of sentencing, a defendant does not evidence a present

ability to make restitution, the court can nevertheless sentence the defendant to make restitution, with the manner of payment to be determined following a hearing at some time in the future.

It is important that the court consider not only the present ability of the defendant to pay restitution, but also his future ability because an order of restitution is enforceable until it is paid. The continuing authority of the court to enforce a sentence imposing restitution was implied in *United States v. Dudley*, 739 F.2d 175 (4th Cir.1984). In *Dudley*, the defendant was convicted of multiple counts of unlawful use of food stamps. He was sentenced to serve four years imprisonment on each count, to pay a fine of $10,000, and to make restitution of $4,807.50 to the Department of Agriculture. He was also given a special parole term of four years. Defendant timely appealed from this sentence, but during the pendency of the appeal, he died. Defendant's counsel then sought to dismiss the appeal as moot. The court held that, although as a result of the defendant's death, the prison term, the fine, and the special parole abated, the order of restitution did *not* abate. The court noted that the prison sentence, parole and fine had a solely penal character. The death of the defendant precluded the prison term, parole, and fine from having the appropriate punitive effect. An order of restitution, however, was imposed not only to rehabilitate the defendant but also to compensate the victim. Although the death of the defendant ensured that the order of restitution could have no rehabilitative effect, the defendant's death in no manner altered the effect of recompense to the victim which would result if the restitution did not abate. Thus, because one of the dual purposes of the order of restitution could still be satisfied by payment of the restitution, the court held that, upon the death of the defendant, the order of restitution did not abate.

Simultaneous sentences of imprisonment and restitution each can stand independently of the other. When a defendant who has been sentenced to a term of imprison-

ment and to make restitution has satisfied the term of imprisonment, the sentence of the defendant is still not fully executed until the restitution has also been paid because at least one function of the sentence (rehabilitation) has not been accomplished. Just as the court retains authority to require a defendant to complete his sentence of incarceration when the defendant, after being sentenced to a term of imprisonment, escapes before completing the sentence and eludes the authorities, so too does the court retain the authority to enforce an order of restitution even though it is not paid or the defendant does not have the means to pay it either immediately or before the term of incarceration has expired.

 A sentence of restitution, however, cannot be enforced by the victim but must be enforced by the district attorney in the criminal courts. Although a sentence of restitution has the partial objective of benefitting the victim, and although it is for this reason, in part, that a sentence to pay restitution remains enforceable until it is paid, despite the completion of a contemporaneously ordered prison sentence, sentencing a defendant to make restitution is not equivalent to entering a civil judgment. Therefore, the victim cannot enforce the order of restitution although he could execute upon a civil judgment. Neither is an order of restitution a substitute for a civil remedy. An order of restitution does not establish a debtor-creditor relationship between the victim and the criminal. *Farber v. Stockton*, 128 Misc.2d 685, 490 N.Y.S.2d 685 (N.Y.City Civ.Ct.1985). The statute granting the criminal courts the authority to impose a sentence of restitution specifically provides that an order of restitution does not bar the victim from pursuing a separate civil action to obtain a judgment for the victim's damages. 18 Pa.C.S. § 1106(g). Thus for a victim to compel a defendant to pay for the victim's losses, the victim must pursue a separate civil action.

In summary, when considering whether to impose a sentence of restitution, the court must conduct a hearing at the time of sentencing. The court must determine the amount

of loss to the victim, whether the defendant caused the loss, and the defendant's present or future ability to pay the amount of restitution ordered. Where there is evidence of present ability to pay restitution, in full or in part, the court should order a method of payment at the time of sentencing which will best serve the needs of the victim and the ability of the defendant; but where there is evidence from which it may be determined that the defendant will have only a future ability to pay, the court can postpone the determination of the method of payment until some designated time in the future.

In the instant case, the court considered the amount of loss and that it was appellant's activities which caused the loss. (N.T., October 19, 1983, at 34 and 38.) There was also ample evidence in the record of defendant's future potential ability to pay restitution. Appellant testified that although he was presently employed, if he was sentenced to a term of incarceration, his employer would terminate his employment. (N.T., October 14, 1983, at 31.) He also testified to having worked at his present job for seven years, and that previously he had worked in a different steel plant for one year. Appellant testified to having held several part-time jobs while in high school, and to having taken the automotive training program while in high school. Since he had been out of high school, he had been out of work for only one year during which he was laid-off and during which he had the initiative and ability to find a different permanent job. (N.T., October 14, 1983, at 33.) Appellant also testified that he was making mortgage payments on a house, although he did not say how much, if any, equity he had in the house. (N.T., October 14, 1983, at 33.) Appellant also testified that he personally had provided the $10,000 cash for his bond. (N.T., October 14, 1983, at 29.) If he does not forfeit his bond, this sum will be more than sufficient to pay the restitution which was ordered. ($6,500.) Thus, the record would support a conclusion that appellant will probably be able to pay the restitution ordered. Therefore, when resentencing appellant, if

restitution is again ordered, the court can determine the best time for and schedule of payment of the restitution.

### III. Withdrawal of Plea

Appellant contends that the trial court erred in denying his petition to withdraw his guilty plea. Appellant sought to withdraw his plea because he claimed that he had not been informed that for three of the four charges to which he was pleading guilty, the penalty would be enhanced because of the other charges to which he was pleading guilty. Because we hold that it was improper for the court to so sentence appellant, we do not reach the issue of whether the court erred in not granting the petition to withdraw the guilty plea.

### IV. Excessive Sentence

Appellant contends that his sentence was excessive. Because we must vacate the sentence and remand for proper application of the sentence guidelines, we do not reach the question of excessiveness of sentence.

Judgments of sentence vacated and remanded for re-sentencing in accordance with this opinion. Jurisdiction is relinquished.

SPAETH, President Judge, files a concurring opinion.

JOHNSON, J., files a concurring and dissenting opinion.

This case was decided prior to the expiration of President Judge SPAETH's term of office.

SPAETH, President Judge, concurring:

Since I believe that the Sentencing Guidelines are unconstitutional, *see Commonwealth v. Kuphal,* 347 Pa.Super. 572, 579, 500 A.2d 1205, 1209, (1985) (SPAETH, P.J., dissenting), I should vacate the entire sentence and not reach the issue of whether the prior record score was properly calculated. I recognize, however, that I was in dissent in *Kuphal,* and therefore note that, accepting *Kuphal* as binding, I join Part I of the majority's opinion. I do reach the issue

of whether restitution was properly ordered, for on the order of vacation and remand that I believe should be entered, the issue would arise again and we should therefore decide it now. On the issue of restitution, I join Part II of the majority's opinion.

JOHNSON, Judge, concurring and dissenting:

I agree with the majority that our decision in *Commonwealth v. Kuphal,* 347 Pa.Super. 572, 500 A.2d 1205 (1985) answers appellant's first contention concerning the legality of the sentencing guidelines. I also agree that appellant must be sustained in his contention that, when a defendant is sentenced on multiple convictions at one sentencing proceeding, no case should be considered a prior conviction in computing the prior record score and guideline sentence for any other case for which the defendant is to be sentenced on that same day.

I must respectfully dissent from part II. RESTITUTION of the Opinion Per Curiam which considers whether government agencies and offices can be included within the definition of "victim" and goes on to hold that the Chester County Detective Office and the Pennsylvania Bureau of Drug Control are "victims" under the restitution statute.

Appellant contends that the order that he pay restitution in the amount of $6,500 to the Chester County Detectives' Office and the Pennsylvania Bureau of Drug Control is illegal. With this contention, I agree. Appellant further contends that 18 Pa.C.S. § 1106 authorizes payment of restitution only to the "victim" of a crime, and the recipients herein were not "victims."

Since I firmly believe that the facts of this particular case cannot satisfy the general rule authorizing restitution, I find it inappropriate to ignore the general rule and proceed to a discussion of whether the government agencies here involved are "victims" under subsection (h) of the restitution statute.

The relevant statutory provision, 18 Pa.C.S. § 1106, provides as follows:

## § 1106. Restitution for injuries to person or property

**(a) General rule.**—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender may be sentenced to make restitution in addition to the punishment prescribed therefor.

. . . .

**(h) Definitions.**—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

. . . .

**"Restitution."** The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.

**"Victim."** Any person, except an offender, who suffered injuries to his person or property as a direct result of the crime.

Appellant herein pleaded guilty to three counts of delivering cocaine and one count of possession with intent to deliver cocaine. The sentencing judge here ordered appellant to pay $6,500 to the Chester County Detectives' Office and the Pennsylvania Bureau of Drug Control. The sentencing judge noted, and the Commonwealth concedes, that the order represented the monies that Appellant received from the government agencies which purchased certain drugs from appellant in the course of the agencies' investigations.

Under the general rule set forth in Section 1106(a), restitution is authorized only in convictions "wherein *property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased* as a direct result of the crime." The Opinion Per Curiam appears to base its conclusion that restitution is proper upon the assertion that "the money used to purchase the drugs was 'lost' because the agency received nothing legal in exchange for its money." 349 Pa.Super. at 599, 504 A.2d at 206. I am

not prepared to accept the assertion that cocaine is *per se* illegal—although I could agree that *delivery* or *possession* of a controlled substance *without proper registration or licensure* is illegal. *See, e.g.,* 35 P.S. § 780–113(30).

More fundamentally, however, my departure from the majority arises from its failure, albeit inadvertent, to *first* determine that the property here involved is contemplated under the general rule *before* proceeding to analyze subsequent criteria. Although the Opinion Per Curiam contains an analysis of how the agencies involved can be deemed to be "victims," the opinion offers no analysis of the general rule contained in Section 1106(a), nor does it intimate how the $6,500 given to appellant by the officers of the agencies can be determined to be property that was "stolen, converted or otherwise unlawfully obtained."

The Commonwealth fails to argue, and indeed it could not so argue, that the $6,500 turned over to appellant was either stolen, converted or otherwise unlawfully obtained by him. Moreover, the crimes of delivery and possession do not necessarily involve the use of monies, *qua* property, that has been stolen, converted or otherwise unlawfully obtained. Therefore, neither the crimes upon which appellant has been convicted nor the facts of this case permits the application of the general rule found in Section 1106(a) providing for restitution, and appellant should not be required to make restitution thereunder.

In *Commonwealth v. Cooper*, 319 Pa.Super. 351, 466 A.2d 195 (1983), we analyzed the case law in other jurisdictions and determined that "restitution is permissible only as to losses flowing from the *conduct for which the defendant has been held criminally accountable.*" 319 Pa.Super. at 356, 466 A.2d at 197 (citations omitted, emphasis added). This is based upon the rationale that due process of law is denied when the losses for which restitution has been imposed did not arise from the very offense for which the defendant was convicted.

Here, we are not dealing with the right of the government to *retain* contraband in resisting a petition for the

return of property seized. See 35 P.S. § 780–128. Rather, the issue before us concerns whether a government agency can benefit from a judgment of sentence mandating restitution, where the amount involved represents nothing more than the replacement of monies voluntarily transferred by that agency to another for the purpose of establishing the commission of a separate crime.

In my own view, the property for which restitution is being here ordered does not fit the statutory definition contained in the general rule controlling restitution found in Section 1106(a) of the Crimes Code. Of equal importance, I have grave concern that we engage in what is arguably the denial of due process of law when we compel restitution without a clear showing that the losses did, in fact and in law, arise from the very offense for which the defendant has been convicted. Finally, I view the ruling of this Court today to be an overruling of the principle set forth in *Commonwealth v. Cooper, supra,* which I would be unable to join.

Since I conclude that the property for which restitution was ordered does not fit the statutory definition of Section 1106(a), I would not proceed to determine whether either of the agencies is a "victim" as defined in Section 1106(h). Because I find restitution is an improper remedy, I also find no need to address the question of whether the restitution order was adequately supported on the record.

I would affirm the judgment of sentence and vacate the order of restitution. Hence this dissent.