## Commonwealth v. Hoyle

*Laurence Harmelin, assistant district attorney,* for the commonwealth.
*Frank Marcone,* for defendant.

STIVELY, *S.J.,* April 25, 1988—Defendant has filed a petition seeking "an order forthwith releasing your petitioner from any and all liability or direction of the court that he pay any monies for restitution . . ." After hearing and consideration of legal memoranda filed, the court makes the following:

### FINDINGS OF FACT

(1) This prosecution arose from a collision occurring on July 30, 1983, between a motor vehicle operated by defendant and a motor vehicle owned by Mary K. Mitchell (now Gillespie). Defendant was charged with driving under the influence of alcohol.

(2) On January 17, 1984, defendant was sentenced to 48 hours to 23 months imprisonment. The order for parole at the end of the 48 hours sentence contained the following: "Make restitution to Mary K. Mitchell in an amount to be later determined by the court." The reason for such a provision was the difficulty in ascertaining the proper amount of restitution at time of sentencing. Immediately

thereafter, parole supervision was transferred to Delaware County.

(3) On November 13, 1985, a parole violation was found, parole was revoked, and defendant was sentenced to serve the balance of his maximum term.

(4) On December 13, 1985, a hearing was held on defendant's motion for reconsideration of sentence or early parole. The motion was based on alleged economic hardship, no mention was made of the restitution order. During the hearing, the court stated that the restitution would be fixed in the amount of $10,660 and there was no opposition by defendant.

(5) On January 6, 1986, a parole order was entered, directing that defendant pay the balance of any fine, costs, and restitution due during the parole period.

(6) On February 19, 1986, upon request of defendant's parole officer, the amount of restitution was reduced from $10,660 to $6,619.90, reflecting a payment of $4,040.10 made to Mary K. Mitchell by State Farm Insurance Company on November 16, 1984.

(7) On November 14, 1983, Mary K. Gillespie (formerly Mary K. Mitchell) entered suit in the Court of Common Pleas, Chester County, Pennsylvania, against Diana S. DeFeo (owner of the vehicle being driven by Hoyle) and Jeffrey C. Hoyle at 415 October Term, 1983, for damages to Mrs. Gillespie's motor vehicle arising out of the collision of July 30, 1983. The complaint, duly verified by Mary K. Gillespie, avers as follows in paragraph 7:

"As a direct and proximate cause of the collison averred above, plaintiff has suffered damages, including, but not limited to: the total loss of her vehicle, the value of which was $3,683.50; the loss of

use of her vehicle, the value of which was $190; the cost of towing her vehicle from the scene, a cost equal to $50; the cost of storing her wrecked vehicle, a cost equal to $533, as well as other incidental damages which remain, as yet, unliquidated."

The complaint demanded that a judgment be entered against defendants DeFeo and Hoyle and in favor of plaintiff Gillespie for a total sum of $4,457.30 plus interest and costs of suit. The complaint did not demand compensation for personal injury.

(8) On November 16, 1984, Mary K. Gillespie and her attorney accepted a check from State Farm Insurance Company in the amount of $4,040.10. Said check was accompanied by a release, signed by Mary K. Gillespie and witnessed by her attorney, releasing and forever discharging Jeffrey C. Hoyle and Diana DeFeo from any claim whatsoever resulting from the collision of July 30, 1983.

(9) On December 6, 1984, No. 415 October Term 1983 was marked "settled, discontinued and ended."

## DISCUSSION

In support of his petition, defendant relies upon a settlement, including a complete written release between Mary K. Gillespie and defendant's insurance carrier in the civil suit arising out of the factual background of this prosecution, viz., 415 October Term, 1983. In subsequent documents, and at hearing, defendant also asked the court to "reconsider the manner in which the monetary loss of the victim was originally established."

For reasons hereinafter stated, the court now believes that the restitution order previously entered here was arrived at without a complete and lawful hearing and findings by the court. Thus, the

present restitution order will be vacated and a proper order, based upon evidence adduced in the current proceedings, will be entered in its stead. This court's authority to take this action is based upon the specific terms of 18 P.S. 1106(c), i.e. "the court . . . may at any time alter or amend any order of restitution made pursuant to this section providing, however, that the court state its reasons and conclusions as a matter of record for any change or amendment to any previous order." Further, the restitution order was unlawful and therefore still subject to challenge by petitioner, i.e., without waiver by lack of earlier attack. *Commonwealth v. Kerr*, 298 Pa. Super. 257, 444 A.2d 758 (1982).

In this commonwealth, restitution is authorized either as a condition of probation or parole or as a direct sentence.[1] 18 Pa.C.S. §1106 and 42 Pa. C.S. §9721(c) provide in pertinent part:

"§1106. Restitution for injuries to person or property:

"(a) *General Rule* — Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender may be sentenced to make restitution in addition to the punishment prescribed therefor.

"(b) *Condition of probation or parole* — Whenever restitution has been ordered pursuant to

---

1. In this case, it is unclear whether restitution was originally ordered as a condition of parole or as a direct sentence. See *Commonwealth v. Walton*, 483 Pa. 588, 397 A.2d 1179. However, the difference between restitution as a direct sentence and as a condition of parole is not pertinent here. See *Commonwealth v. Fuqua*, 267 Pa. Super. 504, 407 A.2d 24 (1979).

subsection (a) and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.

"(c) *Authority of sentencing court* — In determining whether to order restitution as a part of the sentence or as a condition of probation or parole, the court:

"(1) Shall consider the extent of injury suffered by the victim and such other matters as it deems appropriate.

"(2) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just, provided that the period of time during which the offender is ordered to make restitution shall not exceed the maximum term of imprisonment to which the offender could have been sentenced for the crime of which he was convicted.

"(3) May at any time alter or amend any order of restitution made pursuant to this section providing, however, that the court state its reasons and conclusions as a matter of record for any change or amendment to any previous order.

• • •

"(g) *Preservation of private remedies* — No judgment or order of restitution shall debar the owner of the property or the victim who sustained personal injury, by appropriate action, to recover from the offender as otherwise provided by law, provided that any civil award shall be reduced by the amount paid under the criminal judgment.

"§9721(c) *Restitution* — In addition to the alternatives set forth in subsection (a) of this section the court may order the defendant to compensate the

victim of his criminal conduct for the damage or injury that he sustained."

In *Commonwealth v. Mourar,* 349 Pa. Super. 583, 600-3, 504 A.2d 197, 206-8 (1986), the Superior Court set forth the following pertinent principles:

"[T]he order to make restitution has dual purposes: to rehabilitate the defendant and to provide some recompense to the victim. *Commonwealth v. Fuqua,* 267 Pa. Super. 504, 407 A.2d 24 (1979). However, the primary concern in imposing a sentence of restitution is to promote the rehabilitation of the defendant and to impress upon him the responsibility he must accept for his actions. *Id.* at 508, 407 A.2d at 26. To accomplish this end, the court must ensure that the restitution exceeds neither the defendant's ability to pay nor the victim's damages. *Id.*

"Where the defendant is sentenced to pay restitution, the court must conduct a hearing to establish a record to support the order of restitution. *Commonwealth v. Valent,* 317 Pa. Super. 145, 463 A.2d 1127 (1983). The statute provides that the court 'shall consider the extent of injury suffered by the victim and such other matters as it deems appropriate.' 18 Pa.C.S. §1106(c). In *Fuqua,* the court delineated the factors which the court should consider: 'the extent of the injury suffered, the fact that the defendant's action caused the injury and that he will be able to pay for it; and the type of payment — lump sum or installment — that will best serve the needs of the victim and the capabilities of the defendant.' *Fuqua, Id.* at 510, 407 A.2d at 27, citations omitted.

. . .

"Thus, in determining the defendant's ability to pay an order of restitution, the court can consider the education, vocational training, and employment

history of the defendant as they may affect the defendant's future ability to make restitution in addition to considering any assets which defendant may have at present or is likely to acquire in the future and any present income.

. . .

"Thus, we hold that when, at the time of sentencing, a defendant does not evidence a present ability to make restitution, the court can nevertheless sentence the defendant to make restitution, with the manner of payment to be determined following a hearing at some time in the future.

. . .

"A sentence of restitution, however, cannot be enforced by the victim but must be enforced by the district attorney in the criminal courts. Although a sentence of restitution has the partial objective of benefitting the victim, and although it is for this reason, in part, that a sentence to pay restitution remains enforceable until it is paid, despite the completion of a contemporaneously ordered prison sentence, sentencing a defendant to make restitution is not equivalent to entering a civil judgment. Therefore, the victim cannot enforce the order of restitution although he could execute upon a civil judgment. Neither is an order of restitution a substitute for a civil remedy. An order of restitution does not establish a debtor-creditor relationship between the victim and the criminal. *Farber v. Stockton,* 128 Misc.2d 685, 490b N.Y.S.2d 685 (N.Y.City Civ. Ct. 1985). The statute granting the criminal courts the authority to impose a sentence of restitution specifically provides that an order of restitution does not bar the victim from pursuing a separate civil action to obtain a judgment for the victim's damages. 18 Pa.C.S. §1106(g). Thus for a victim to compel a defendant to pay for the victim's

losses, the victim must pursue a separate civil action."

. . .

The *Mourar* opinion, 349 Pa. Super. at 603-4, 504 A.2d at 208, provides an excellent summary of the findings required of the court[2] after a proper restitution hearing:

"In summary, when considering whether to impose a sentence of restitution, the court must conduct a hearing at the time of sentencing. The court must determine the amount of loss to the victim, whether the defendant caused the loss, and the defendant's present or future ability to pay the amount of restitution ordered. Where there is evidence of present ability to pay restitution, in full or in part, the court should order a method of payment at the time of sentencing which will best serve the needs of the victim and the ability of the defendant; but where there is evidence from which it may be determined that the defendant will have only a future ability to pay, the court can postpone the determination of the method of payment until some designated time in the future."

The record of this case shows *only* the following as a "basis" for the original restitution order of $10,660:

MR. HARMELIN[3]: It's $10,600.

---

2. Delegation to the county probation department of the authority to determine the *amount* of restitution to be paid has repeatedly been held to be improper. *Commonwealth v. Kioske,* 337 Pa. Super. 593, 487 A.2d 420 (1985); *Commonwealth v. Seminko,* 297 Pa. Super. 418, 443 A.2d 1192 (1982). It is also considered to be the better practice for the sentencing court, rather than a probation officer, to determine the *manner* in which restitution is to be paid. *Commonwealth v. Wood,* 300 Pa. Super 463, 446 A.2d 948 (1982).

3. Mr. Harmelin was an assistant district attorney at the time.

THE COURT: What does that represent?

MR. HARMELIN: $9,300 in property damage to Dr. Mary K. Mitchell's automobile; $1,000 for storage and towing; $120 for the ambulance; $240 for x-rays.

At one of the hearings in these proceedings, Mary K. Gillespie stated that she had received a $10,000 estimate for repairs to her vehicle but she never produced a writing to that effect or any supporting evidence.

However, we do have a clear and unequivocal statement by Mrs. Gillespie of her claimed loss. That statement, under oath, is contained in paragraph 7 of her civil complaint. Further, Mrs. Gillespie later accepted a similar sum ($4,040.10) in full settlement of her claim. We cannot accept Mrs. Gillespie's contention that she thought that she was settling only "part" of her claim when she signed the release to defendant's carrier. The release, by its terms, went to "Jeffrey C. Hoyle and Diana DeFeo." Mrs. Gillespie is an obviously intelligent person and, at the time of signing the release, she was represented by David Jakobi, Esq., a competent member of this bar. Mr. Jakobi witnessed his client's signature on the release.

Defendant contends that the aforesaid release, without more, means that *no* restitution by him is now due. There is no merit in this contention. Mrs. Gillespie had no power to release defendant from making court-ordered restitution. As *Mourar, Id.* at 603, 504 A.2d at 208 pointed out, "a sentence of restitution cannot be enforced by the victim." "An order of restitution does not establish a debtor-creditor relationship between the victim and the creditor." We have considered the settlement sum as being indicative of Mrs. Gillespie's opinion of her

amount of loss; but it has no other relevancy in these proceedings.

Thus, we find the amount of loss to the victim to be $4,457.30.

We find as a fact that defendant caused the aforesaid loss — this fact has not been disputed by defendant.

At one of the hearings in these proceedings, defendant's counsel made a lengthy statement as to his client's financial resources. On that basis, the court finds that defendant does have the present ability to pay the amount of restitution that will be hereinafter ordered, said payment to be made in installments as ordered by the court.

One further issue must be addressed before a complete order of restitution is entered.

That remaining problem is the credit, if any, to be given defendant for the amount paid the victim by the defendant's insurance company in the civil action, viz., $4,040.10. Although our appellate courts have addressed the issue of the effect of payment by the *victim's* insurance carrier, they have not directly addressed the present situation.

In *Commonwealth v. Kerr, supra,* the Superior Court held that defendant could be directed to make restitution even though the *victim* was insured and received compensation from his (the victim's) insurer for loss sustained. The *Kerr* opinion stated, at 298 Pa. Super 261, 444 A.2d 760, "[o]ur view is supported by the analogous collateral source rule of damages in tort (citing cases)." "The principle supporting the collateral source rule is 'the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused *which emanate from sources other than the wrongdoer.*' "(emphasis added)

In the instant case, money paid to the victim by

defendant's insurer certainly "emanates" from defendant. Moreover, we find the policy contained in the Victims Compensation Act, 71 P.S. §180-7 et seq. persuasive. While the act does not technically apply to this case, it does apply to compensate victims of crimes other than those involving the operation of a motor vehicle which results in injury. In §180-7.9(e) of the act, any award to a victim shall be reduced by amount of any payments received as a result of the injury (1) from *or on behalf* of the person who committed the crime, or (2) *under any insurance programs* including those mandated by law.

Further, the similar Federal Act in 18 U.S.C. §3579(e)(a) provides that an order of restitution "shall be set off against any amount later recovered as compensatory damages." While this act is also not directly applicable, we find its policy, as well as the policy in the similar state provision, fair and persuasive.

Some general guidance is provided by the proposition set forth in *Mourar, supra,* i.e., the court must ensure that the restitution does not exceed the victim's damages. The provisions of section g of 18 Pa.C.S. §1106(g) (preserving private remedies) provides that any civil award "shall be reduced by the amount paid under the criminal judgment" indicating that the victim can recover *only* the total amount of the civil judgment plus the amount of the restitution order.

It may well be argued that payment by his insurance carrier does little to "rehabilitate" defendant. However, said payment does represent insurance premiums paid by defendant over period of years, thus "emanating" from defendant.

We will give defendant credit, toward the payment of the restitution order, for the sum of

$4,040.10, paid to Mary K. Gillespie by State Farm Insurance Company.

## ORDER

And now, this April 25, 1988, after hearing, any and all orders directing the payment of restitution by defendant, specifically including the order of February 19, 1986, are vacated; the court now finding the following facts: (1) the amount of loss to the victim, Mary K. Gillespie (formerly, Mitchell) is $4,457.30; (2) defendant caused the aforesaid loss; (3) defendant does have the present and future ability to pay the amount of restitution hereinafter ordered, in installments; and it is further ordered that defendant shall make restitution to the victim, Mary K. Gillespie, in the amount of $4,457.30, the same to be paid in installments of $50 each on the first day of each month, beginning June 1, 1988 until the said total amount is paid; and it is further ordered that defendant shall be credited, toward payment of the aforesaid amount with the sum of $4,040.10, paid to Mary K. Gillespie by State Farm Auto Insurance Company on/about November 16, 1984.